MAYOR AND CITY COUNCIL OF NASHVILLE *v.* BURNS.

(*Nashville.*   December Term, 1915.)

**MUNICIPAL COPORATIONS.   Torts.   Public parks.   Injury to minor.**

A municipal corporation, owning and operating a park and playground for the benefit of the public, under charge of a park commission, with police assigned to insure good order, was engaged in the public duty of preserving and maintaining the public health, and not in any proprietary or ministerial duty, and hence was not liable to a minor, struck by a swing which other boys swinging too high, had turned over.

Cases cited and approved:  Harper v. Topeka, 92 Kans., 11; Board of Park Commissioners v. Prinz, 127 Ky., 460; Russell v. Tacoma, 8 Wash., 156; Blair v. Granger, 24 R. I., 17; Steele v. City of Boston, 128 Mass., 583; Clark v. Inhabitants of Waltham, 128 Mass., 567; Conelly v. Nashville, 100 Tenn., 262; Irvine v. Chattanooga, 101 Tenn., 294; Davis v. Knoxville, 90 Tenn., 599; Pesterfield v. Vickers, 43 Tenn., 206; Foster v. Water Co., 71 Tenn., 42; Mayor of Memphis v, Lasser, 28 Tenn., 757; Mayor and Aldermen of Knoxville v. Bell, 80 Tenn., 157; Niblett v. Nashville, 59 Tenn., 684; Fleming v. Memphis, 126 Tenn., 331.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—W. S. BEARDEN, Chancellor.

PITTS & McCONNICO and M. S. Ross, for plaintiff.

A. G. Ewing, Jr., City Attorney, F. M. Girard, Assistant City Attorney, and M. T. Bryan, for defendant.

Mr. Chief Justice Neil delivered the opinion of the Court.

Defendant in error, a minor, sued by next friend to recover damages for injuries alleged to have been inflicted on him by the negligence of the city's agents in not sufficiently guarding the use of a swing in one of its parks. He recovered a verdict for $600. His father likewise sued for damages accruing to him by reason of the injury inflicted on his son, and made a recovery of $200. The two cases were tried together. There was a motion for peremptory instructions in the trial court, which was there overruled, but, on appeal to the court of civil appeals, the motion was sustained, and the suits were dismissed. The cases then came here on the writ of *certiorari.*

We are of the opinion that the court of civil appeals reached the correct conclusion.

The city of Nashville owns and operates, for the benefit of the public, eighteen parks and playgrounds without compensation. These parks are under the charge of a park commission, and policemen are assigned to them for the protection of visitors, and, generally, to insure good order.

The injury complained of occurred in a little park in East Nashville. It had been but recently opened.

Among other means provided for the comfort of the people were certain swings. One of these was known as a baby swing. It was designed only for small children of from five to seven years old; but, on the occasion in question, three larger boys, perhaps of twelve or fourteen years, while using the swing, turned it over in trying to swing too high. Defendant in error, who was standing near the swing, was struck by it as it fell to the ground, and was seriously injured. At the time this accident happened lights had not yet been installed in the little park, and children were not expected to play there after dark. When the injury occurred, the seats had been taken from the swings and placed in a house near by, the attendant had left, and the park was considered closed. The boys, however, either remained in the park, or came in afterwards, and removed the swing in question from the place where it had been stationed, procured the seats, it having three, and began to use it, with the result stated, without the knowledge of the officers or agents of the city.

The principal negligence urged against the city was the permission given by the policeman in charge to large boys from time to time to use the baby swing, from which it is insisted they felt justified in using it on the occasion in hand.

We believe that a peremptory instruction might well have been based on the absence of any negligence of the city, even assuming that it was liable for the negligence of its agents in the management of parks.

The learned court of civil appeals, however, considered the question whether any liability existed at all against municipalities for injuries to persons frequenting parks by reason of the negligence of the servants of such corporations, and held that no such liability existed.

It is true there is great conflict of opinion in the several courts of final resort in this country upon the question whether municipal corporations, in maintaining parks as resorts for the people, are in the discharge of a public duty, or one purely proprietary and ministerial. It is not our purpose to discuss this question at length, but only to indicate, in a general way, that we are in accord with those authorities which hold that such duty is a public one, based on the obligation of the municipality, as a branch of the State government, to guard and preserve, and maintain, the public health. Parks, in crowded cities, are eminently conducive to this purpose, as places to which the people may go and enjoy pure air, the sight of trees, grass, and flowers, and find the means of release for a time from the weight of care, rest from labor, relaxation for body and mind, and the recuperation of exhausted energies —all aids to health of incalculable value. We approve the following authorities on the subject: *Harper* v. *Topeka,* 92 Kan., 11, 139 Pac., 1018, 51 L. R. A. (N. S.), 1032; *Board of Park Commissioners* v. *Prinz,* 127 Ky., 460, 105 S. W., 948; *Russell* v. *Tacoma,* 8 Wash., 156, 35 Pac., 605, 40 Am. St. Rep., 895; *Blair* v. *Granger,* 24 R. I., 17, 51 Atl., 1042; *Steele* v. *City of Boston,*

128 Mass., 583; *Clark* v. *Inhabitants of Waltham,* 128
Mass., 567. We have read and considered the cases
cited from other States, and, while conceding that they
outnumber those we have mentioned, we do not think
they are so well founded in principle. Moreover, the
ground we have mentioned as governing our decision
accords with that controlling other cases in this State
on kindred aspects of municipal duty. *Conelly* v. *Nash-
ville,* 100 Tenn., 262, 46 S. W., 565; *Irvine* v. *Chatta-
nooga,* 101 Tenn., 294, 47 S. W., 419; *Davis* v. *Knox-
ville,* 90 Tenn., 599, 18 S. W., 254; *Pesterfield* v. *Vick-
ers,* 3 Cold., 206. We fully sympathize with the obser-
vations of Mr. Justice Cooper in *Foster* v. *Water Co.,*
3 Lea, 42, 48, to the effect that, while we enforce the
liability arising out of the violation of a duty owing
in their proprietary character, the inclination of the
courts has been not to press the pecuniary liability of
municipal corporations to cases where a duty is as-
sumed, not for the mere proprietary or corporate bene-
fit, but for the common good. He continues:

The courts "have refused to hold a city liable for
the acts of its police officers, although they are ap-
pointed by it, or for the acts or negligence of its agents
and employees in charge of patients in a public hos-
pital; for the misconduct of the members of its fire de-
partment, or for the city's own neglect to provide suit-
able engines or fire apparatus, or to keep in repair
public cisterns, or continue the supply of water to
particular hydrants. . . . The reason is that the
hazard of pecuniary loss might prevent the corpora-

tion from assuming duties which, although not strictly corporate, nor essential to the corporate existence, largely subserve the public interest. The supplying of water for the extinguishment of fires is precisely one of those acts which bring no profit to the corporation, but are eminently humanitarian. To hold a city responsible for the loss of a building, or of whole streets of houses, as sometimes happens, because it might be thought, or because in reality, some of its indispensable agents had been negligent of their duty, might well frighten our municipal corporations from assuming the startling risk.''

These views were ratified and utilized and substantially passed into decision and judgment in *Irvine* v. *Chattanooga,* supra, in which case it was sought to hold Chattanooga liable for the negligence of its agents in the fire department, whereby complainant's house was lost by fire, through want of diligence on the part of the department. In *Conelly* v. *Nashville,* supra, it was held that the city was not liable for the negligence of one of its employees, who in driving a sprinkling cart ran against a carriage and injured the occupant. The ground of the decision was that the city, in sprinkling the streets, was engaged in an effort to preserve the public health. In the course of the opinion the court referred, with approval, to authorities of other States wherein it had been held that a city was not liable for an injury caused by the negligence of an ambulance driver; for the loss of a slave placed by his master in a city hospital to be treated for smallpox, but who,

through the negligence of his attendant, escaped and died from exposure; for the damage caused by a hook and ladder company while driving rapidly along a public street to a fire; for injury to a pupil from defective heating apparatus in a public school.

It is urged by counsel for defendant in error that all or nearly all of the cases which we have cited in support of our conclusion are from States in which it is likewise held that municipal corporations are not liable for injuries caused by defects in their streets unless made so by statute, on the ground that the construction and maintenance of public streets are a part of the public duty of such corporations, while the contrary view was expressed in this State a long time ago in the case of *Mayor of Memphis* v. *Lasser,* 9 Humph., 757; it having been held in that case that such duty belonged to the private or proprietary aspect of the dual nature of such organizations. The *Lassar Case* has been followed in all subsequent cases on the point that liability for injuries caused by defective streets exists against municipal corporations, although the ground on which it was based has been more than once questioned (*Mayor and Aldermen of Knoxville* v. *Bell,* 12 Lea, 157, 158; *Niblett* v. *Nashville,* 12 Heisk., 684, 686, 27 Am. Rep., 755); and the liability of cities and towns for injuries caused by defective streets has been asserted in a very recent reported case (*Fleming* v. *Memphis,* 126 Tenn., 331, 148 S. W., 1057, 42 L. R. A. [N. S.], 493, Ann. Cas., 1913D, 1306), and is daily applied without reference to the original ground

of the early decision asserting the liability. It is now simply treated as settled law. But the question now before us is not necessarily bound up with the one last stated. It may be true that both are rooted in the same general principle (see, however, note "b" to 20 L. R. A. [N. S.], 518, 519), but it does not follow that we are compelled to reason from our street cases as furnishing binding analogies, or that we should overrule those cases as not founded on sound principle; nor does it even follow that the street cases were erroneously based. Every one knows, as stated in *Foster* v. *Water Co.*, supra, and as conceded in the authorities everywhere, that it is extremely difficult to correctly assign the various duties of a municipal corporation as belonging to this or that aspect of its nature. Suffice it to say that we believe our conclusion on the subject of parks is soundly based.

We do not say that the city, and its officers in charge of its parks, would not be guilty of a misdemeanor, and so indictable, for permitting these places to become dangerous to life or limb; but that liability rests on a different ground, and does not arise in this case.

The judgment of the court of civil appeals must be affirmed, with costs.