## VANDERFORD et ux. v. CITY OF HOUSTON. (No. 8874.)

(Court of Civil Appeals of Texas. Galveston. June 24, 1926.)

**1. Municipal corporations ⬉733(1).**

Maintenance of public parks *held* to be exercise of governmental function of municipality.

**2. Municipal corporations ⬉733(1).**

Under Houston Charter, art. 2, §§ 2, 5, and Rev. St. 1925, art. 1175, subd. 15, and articles 6080, 6081, city in maintaining public parks *held* engaged in governmental function, precluding liability for negligence, in absence of statute.

**3. Municipal corporations ⬉733(1).**

Municipality should not be *held* to be exercising governmental function in maintaining public park, when it knowingly permits public nuisance therein likely to cause injury.

**4. Municipal corporations ⬉851.**

Wading pool in public park of varying depth of from 29 inches to 3 feet *held* not so essentially dangerous as would warrant holding municipality liable.

**5. Municipal corporations ⬉851.**

Invitation to parents to permit children to visit park imposed no liability on city for injury to young children caused by amusement devices constructed for older children.

**6. Municipal corporations ⬉851.**

Parent's acceptance of city's invitation for children to use amusement features of public park *held* to carry with it assumption of risk of danger to children incapable of protecting themselves.

**7. Death ⬉11.**

Vernon's Ann. Civ. St. Supp. 1922, art. 4694, giving cause of action for injuries resulting in death, only abrogates common-law rule, which denied right of recovery to those sustaining loss by death through negligence.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by Ed. Vanderford and wife against the City of Houston. From a judgment sustaining a demurrer and dismissing the suit, plaintiffs appeal. Affirmed.

Clark & Peddy, of Houston, for appellants.

Sewall Myer and J. H. Painter, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellants to recover damages for the injury sustained by them in the death of their child, which it is alleged was caused by the negligence of the city of Houston, its agents and servants.

Plaintiffs' petition, after alleging that the defendant, city of Houston, is a municipal corporation duly incorporated and chartered under the Constitution and laws of this state, contains the following allegations:

"That the defendant herein is a large and populous city, with well over 200,000 inhabitants, with a mayor, a city council, and other governing officers and bodies, as provided for in its charter, which charter was adopted and amended by the requisite number of voters at elections duly held by virtue of the authority conferred by the constitutional amendment aforesaid, and the enabling act passed in pursuance thereof, and that, by reason of the powers so conferred upon said municipality, the city of Houston was specially empowered and authorized to acquire by purchase, lease, and condemnation parks, playgrounds, baths, etc., and to establish, open, own, care for, supervise, and maintain them in its corporate capacity, and that, in pursuance with such specially vested powers, the said city of Houston, owns, operates, and maintains a number of parks, squares, and playgrounds within the corporate limits of said municipality, and that among the number so operated and maintained by said city, within its corporate limits, is a park or playground commonly known as Settegast Park, situated in the block bounded by Congress avenue, Palmer street, Franklin avenue, and Paige street. That said park is situate in a densely populated portion of the city, being in close proximity to the International-Great Northern Railroad Company's shops and yards, and surrounded by the homes and dwellings of said company's employees, and other citizens of a like and similar class.

"II. That prior to August 12, A. D. 1924, the said defendant city had caused to be placed on said playgrounds known as Settegast Park numerous devices in the way of swings, see-saws, merry-go-rounds, and exercise rings, and had laid off thereon basket ball grounds, and, in addition thereto, had constructed, and was maintaining, therein a concrete pool of approximately 32 feet in width and 72 feet in length, with varying depths from 29 inches to approximately 3 feet or more; that this pool was designed and built as a wading pool for children, and as such was used by the children of that neighborhood and adjoining vicinity. Petitioners would further show that, by reason of the numerous devices for amusement placed in said park and maintained by city, the grounds became especially attractive to children, and as the neighborhood in which it was situate contains large numbers of children whose families were usually of the laboring class, the playgrounds became a popular resort for such children, who frequented same in great numbers.

"III. Petitioners would further aver that said defendant, its officers, representatives, agents, and servants knew of these conditions aforesaid, and by reason thereof, had encouraged and invited the parents of said children to permit their children to frequent said park, and to spend long hours in playing around the grounds and in the use of the different devices in question, and that by reason thereof said parents had the right to rely on the officers, representatives, agents, and servants of said city to see that children were afforded protection in the frequenting of said ground and the use of the devices and pool aforesaid, but that, notwithstanding these facts, circumstances, and conditions, the said defendant corporation failed and refused to provide adequate protection for the children aforesaid in the furnishing of a requisite number of competent guards and attendants, and to properly fence in said pool so as to guard against the indiscriminate access thereto by children of tender and indiscreet age who were in the habit of frequenting said park in company with the other children—all of which said defendant corporation, its officers, agents, servants, and employees knew, or in the exercise of ordinary care would have known.

"IV. Petitioners now aver that on the date aforesaid, to wit, the 12th day of August, A. D. 1924, their minor child, Dolly Christine, aged two years, while playing around the edge of said pool, fell, or in some way unknown to these petitioners, was caused to fall, into same, and was drowned; that at the time of said accident there was no guard or other attendant present at or near said pool, despite the fact that there were a number of children of varying ages playing in the water and around the edges thereof, and that said attendant or guard knew of these conditions, and, at the time thereof, negligently and carelessly absented himself from the vicinity of said pool, with knowledge on his part that there was no other adult person of mature judgment and discretion around to look after the safety of said children, and that it was dangerous to leave children of tender and indiscreet age in close proximity to said body of water, and that such negligence on the part of said attendant, as the agent, servant, or employee of defendant corporation, was the proximate cause of the death of said minor child, and plaintiff's resultant damages.

"V. Petitioners further allege that said defendant corporation was also guilty of negligence in not having an adequate number of attendants or guards in said part at the time in question, and in not having said pond or pool properly inclosed with sufficient fencing, or railing, or other barrier, so as to prevent children of tender and indiscreet years, including said petitioners' minor child, from gaining access to said pool, all of which negligence, petitioners aver, was the proximate cause of the death of petitioners' child, and plaintiffs' damages as hereinafter set forth."

Further allegations of the petition set out the elements and amounts of plaintiffs' damage, and show a compliance by plaintiffs with

the provisions of the city charter requiring 90 days' notice of their claim for damages, and the refusal of the claim by the city council.

The prayer is for recovery of the damages claimed ($25,000), and for equity and general relief.

To this petition the defendant interposed a general demurrer and several special exceptions. The trial court sustained the general demurrer, and, plaintiffs declining to amend their petition, the suit was dismissed.

Appellants in a forceful brief, in which most of the cases from this and other states bearing upon the questions are cited, very earnestly insist that the trial court erred in sustaining the general demurrer. As the basis of their contention that the general demurrer should have been overruled, appellants present the following propositions, which are supported by appropriate assignments of error:

#### "First Proposition.

"Under facts as disclosed by the pleadings, the city of Houston, in the maintenance of its parks and amusement devices therein situate, was acting in a corporate capacity, and in the exercise of a proprietary function, and therefore would be liable for damages resulting from the negligent acts of its agents, servants, and representatives.

#### "Second Proposition.

"Under the provisions of article 4694, Vernon's Civil Statutes, 1922 Supplement (Acts 1921, c. 109, § 1), a municipal corporation is liable in damages for the death of any person when caused by the wrongful act, neglect, carelessness, unskillfulness, or default of its agents or servants, regardless of the capacity in which such municipality may have acted."

As indicated by these propositions, appellants recognize the general rule that, if the city, in the maintenance of the public park in which appellants' child lost its life, was exercising a governmental function, it is not liable in damages for the death of the child caused by the negligence alleged in the petition.

The distinction between a governmental and a proprietary business or function, when those terms are sought to be applied to the ever increasing activities of municipal governments, is becoming more and more difficult of delineation because of this continuous extension of the business of municipal government made necessary by the increase in population and the complexities and demands of advancing civilization.

[1] The difficulty of making this distinction is evidenced by the conflict between the decisions of the different states upon the question presented by this appeal of whether the maintenance of a public park or playground by a city is the carrying on of the governmental or proprietary business of the city. The decisions of the Supreme Court of some of the states sustain appellants' contention that the maintenance of a public park by a city is a proprietary municipal business, and the city is liable for the negligence of its agents and servants in the maintenance and operation of the park, but we think the weight of authority sustains the proposition that the maintenance of public parks by municipal corporations should be held to be the exercise of a governmental function of the municipality.

In the case of City of Galveston v. Posnainsky, 62 Tex. 125, 50 Am. Rep. 517, Judge Stayton, in one of his characteristic, profound, and exhaustive opinions, after discussing cases from many of the states, and noting the distinction in the liability of a quasi corporation created by the state, and given "powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectually discharge duties essentially its own," and a municipal corporation which is created by laws "enacted at the request of those who are to be most directly benefited by them and with a view to this end," says:

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be."

The charter of the city of Houston, in article 2, § 2, among other things, provides that—

"The city council shall have the power to preserve and promote good government, order, security, amusement, peace, quiet, education, prosperity and the general welfare of said city and its inhabitants; * * * to exercise such powers as conduce to the public welfare, happiness and prosperity of said city and its inhabitants."

Section 5 of said article 2 provides that—

"The city of Houston shall have power to lay out, establish, open, supervise, maintain, etc., streets, alleys, sidewalks, squares, parks, public places and bridges, and to regulate the uses thereof."

Section 15, art. 1175, of the Revised Statutes of the State of Texas 1925, known as the Enabling Act for Home Rule Cities, provides, among other things, that the city shall have the power to take any private property, within or without the city limits, for parks, and confers power of eminent domain upon cities for this purpose.

Article 6080 and 6081 of the Revised Statutes 1925 provide as follows:

"The governing body of an incorporated city may purchase, improve and maintain land for use as city parks. Such parks shall not exceed two in number for each two thousand inhabitants. If such body establishes more than one of such parks, it shall locate them in widely separated parts of the city. Such body is authorized to levy and collect a tax not to exceed five cents on each one hundred dollars of its assessed valuation for the purchase and improvement of lands for use as such parks, and may levy and collect a like annual tax to properly maintain such parks. Said body shall have full power and authority over all such parks, and may build and construct such building as they may deem necessary, lay out and open driveways and walks, pave any part thereof, construct ditches or lakes, set out trees and shrubs, and make such other improvements as they may deem proper. Such parks shall remain open for the free use of the public under such reasonable rules as said body may prescribe.

"Article 6081. *Concessions in City Park.* No person, firm or association of persons shall have the right to offer for sale or barter, exhibit anything or conduct any place of amusement where a fee is charged within said parks without first obtaining the consent of the governing body, or its authorized agent, paying for such privilege or concession the sum agreed upon by said body or its agent. All revenue from the sale of such rights, privileges or concessions shall go into a fund for the maintenance of said parks."

[2] In view of these statutory provisions, we think it must be held that, in the maintenance of its public parks, the city of Houston is exercising powers conferred upon it by the state for essentially public purposes pertaining to the administration of laws enacted in furtherance of the general policy of the state. As such agent of the state, suit cannot be maintained against it to recover damages caused by its negligent act or omission in the exercise of the powers conferred upon it for the purpose stated, in the absence of a statute authorizing such suit.

In the case of Board of Park Commissioners v. Prinz, 127 Ky. 468, 105 S. W. 949, the Supreme Court of Kentucky, in a well-considered opinion, holds that a city is not liable for the negligence or torts of its agents in charge of its public parks. In discussing the question presented in that case, the court says:

"There are two general principles underlying the administration of government of municipal corporations. The one is that a municipal corporation in the preservation of the peace, public health, maintenance of good order, and the enforcement of the laws for the safety of the public, possesses governmental functions and represents the state. The other is where the municipal corporation exercises those powers and privileges conferred for a private, local or merely corporate purposes, and peculiarly for the benefit of the corporation. Under the former, the city is not liable for the torts of its officers or agents; under the latter, it is."

Another case directly in point, and which fully supports our conclusion above stated, is that of City of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111. In disposing of the question of whether the maintenance of public parks by the city was the exercise of a governmental or a proprietary and ministerial function, the Supreme Court of Tennessee says:

"It is not our purpose to discuss this question at length, but only to indicate, in a general way, that we are in accord with those authorities which hold that such duty is a public one, based on the obligation of the municipality, as a branch of the state government, to guard and preserve, and maintain, the public health. Parks, in crowded cities, are eminently conducive to this purpose, as places to which the people may go and enjoy pure air, the sight of trees, grass, and flowers, and find the means of release for a time from the weight of care, rest from labor, relaxation for body and mind, and the recuperation of exhausted energies—all aids to health of incalculable value."

In support of its conclusions, the court cites a number of cases from other states.

It seems to us the rule announced in the cases we have cited is founded in wisdom, and that the public welfare will be best subserved by its enforcement by our courts, even though it may result in hardship in individual cases. The great benefit of public parks in preserving the public health in our populous cities and in conducing to the happiness and general welfare of the citizens, especially children, can hardly be overestimated. If a city should be held liable for any injury caused by negligent acts or omissions of its employees in charge of its public parks, the hazard of the pecuniary loss which it might thereby sustain would greatly hinder, if not wholly prevent, it from providing these places which contribute so much to the general welfare.

[3] This rule of exemption should not apply where the negligence causing the injury is the affirmative negligence of the municipality, acting through its corporate officers, in creating a public nuisance or any essentially dangerous condition, or knowingly permitting such nuisance or condition to exist in a public park or other place where it is likely to cause injury. In such case it should not be held that the city, in creating or knowingly permitting the nuisance or dangerous condition to exist, was exercising a governmental function.

One of the cases cited by appellants (Capp v. St. Louis, 251 Mo. 345, 158 S. W. 616, 46 L. R. A. [N. S.] 731, Ann. Cas. 1915C, 245), is a case of this kind, and is easily distinguished from the instant case.

[4] There is nothing essentially dangerous in the wading pool described in plaintiff's petition, and its presence in the park could not be said to create a nuisance or to render the park not reasonably safe for the public use

for which it is designed. All of the amusement devices provided for children in public parks would largely fail of their purpose if they were not made especially attractive and easily accessible to children, and to hold the city liable in this case for the death of appellants' child on the principle announced in what are known as the "turn-table cases" would be an unwarranted extension of the doctrine of those cases, which has already been carried by our courts to the verge of reason and propriety.

[5, 6] Any invitation of the city, expressed or implied, to parents to permit their children to visit the park and enjoy its amusement features, imposed no liability upon the city for injury to children of tender years caused by amusement devices constructed for older children, and perfectly safe for the uses for which they were designed. The acceptance of such invitation by parents carried with it the assumption by them of the risk of the danger to children incapable of protecting themselves, and unaccompanied by some one able to care for them, from the amusement devices for older children which were proper and necessary in the operation of the park, and with the existence of which they must be charged with knowledge. We think it clear that appellants' second proposition cannot be sustained.

[7] Our statute (article 4694, Vernon's Supp. 1922), giving a cause of action for injuries resulting in death, does no more than abrogate the common-law rule which denied to those sustaining loss by the death of one killed by the negligence of another the right to recover damages for such loss, and the statute in no other way affects the question of liability for negligent injury. Unless the person or corporation causing the injury would have been liable to the injured person if death had not ensued, there can be no liability to those who have sustained loss by his death.

These conclusions require an affirmance of the judgment, and it has been so ordered.

Affirmed.