**WIGGINS v. CITY OF FORT WORTH.**[*]
(No. 11842.)

Court of Civil Appeals of Texas. Fort Worth.
July 16, 1927.

Rehearing Denied Oct. 1, 1927.

1. **Municipal corporations** ⬤➡733(1)—**As general rule, cities are not liable for negligence in construction, management, or maintenance of "public park"; "governmental function" (Rev. St. 1925, art. 6080).**

In view of Rev. St. 1925, art. 6080, providing that city may purchase, improve, and maintain land for parks, and the general nature of a "public park," the construction, management, or maintenance of public parks is a "governmental function," and as a general rule cities will not be liable for injuries resulting from negligence in constructing, managing, or maintaining them.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Governmental Function.]

2. **Municipal corporations** ⬤➡729—**City deriving income from public park is liable for negligence in maintenance.**

Where city derives an income from public park owned or managed by it, it will be liable for injuries resulting from negligence in the maintenance and management thereof.

3. **Municipal corporations** ⬤➡851—**City, creating or permitting "nuisance" in public park, is liable for resulting injury.**

Where city creates or knowingly permits to exist a "nuisance" or dangerous condition in a public park, it is liable for any injury resulting therefrom (citing Words and Phrases, "Nuisance").

4. **Municipal corporations** ⬤➡857—**Complaint alleging city negligently maintained bear cage in public park, with hole in fence through which bear injured child, held sufficient.**

Complaint in suit for injuries, alleging that city negligently constructed and maintained bear cage in public park with hole in outer barrier fence through which bear reached and injured child, and that defendant knew that vicinity of cage would be visited by children of immature age, held sufficient to state cause of action against city.

**5. Municipal corporations ⬤➡851—Bear cage in public park, with hole in fence through which bear reached child, held "nuisance."**

Maintenance of bear cage in public park with hole in outer fence through which bear reached and injured child *held* to constitute a dangerous condition which was a "nuisance."

[Ed. Note.—For other definitions. see Words and Phrases, First and Second Series, Nuisance.]

**6. Municipal corporations ⬤➡747(1)—Council had duty to supervise park board and prevent or abate nuisance in park.**

Where city charter permitting management and control of public park to park board expressly reserves supervisory control in city council, council has duty of so supervising action of park board as to prevent or abate public nuisance in park.

**7. Municipal corporations ⬤➡747(1)—Park board, subject to city council, held mere agency of city in managing and maintaining parks.**

In action against city for injury sustained by bear reaching through cage in public park and injuring child, park board, subject to city council under charter, *held* mere agency of city in managing and maintaining parks.

**8. Municipal corporations ⬤➡857—Complaint held to sufficiently allege notice to city of defective bear cage in park.**

In action for personal injuries, complaint alleging that city maintained bear in defective cage in public park, that bear reached through outer fence and injured child, that defects had existed long prior to accident and were known to defendant, and that defendant knew vicinity of cage would be visited by children of immature age *held* sufficient, notwithstanding charter provision requiring strict notices to city engineer or city council of defects in city property before city would be liable for injury resulting therefrom.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by E. J. Wiggins for himself and as next friend for his minor son, Jack Wiggins, against the City of Fort Worth. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellant.

R. E. Rouer and F. G. Coates, both of Fort Worth, for appellee.

CONNER, C. J. Appellant, for himself and as next friend for his minor son, Jack Wiggins, instituted this suit against the appellee city for damages, on grounds hereinafter set out, and has duly prosecuted this appeal from an order sustaining the city's general demurrer to the petition setting forth the plaintiffs' cause of action.

In said petition, omitting formal parts, it is charged, in substance, and as quoted, that the defendant city is a municipal corporation, duly incorporated and existing under the laws of Texas, having a mayor, city council, and other officers; that the defendant, within its corporate limits, owns, and maintains a "public park known as Forest Park," within which the city had collected a number of animals "known to be wild and dangerous," including several bears; that on May 1, 1925, the minor plaintiff, Jack Wiggins, then 8 years of age, was in said park and on one of the public walks immediately in front of a cage occupied by a "large, ferocious, and dangerous bear belonging to and maintained by the defendant, which animal was known to the defendant to be wild, dangerous, and ferocious," and that, while said minor was standing on the walk and in front of said cage which confined said bear, it reached its fore foot and leg through the wire netting constituting the wall of the cage, and seized and drew the left leg and foot of said minor child through the cage and thereupon tore, cut, and chewed a large part of the flesh from that part of the boy's leg below the knee, and entirely severed the tendons of the fore part of the leg, thus causing excruciating physical, mental, and nervous pain, and permanently injured and deformed the boy; that the flesh and tendons thereof cannot and will not grow back and be restored to a normal condition, and that as a result the said minor can walk on said foot only by the use of an iron and leather brace and support, and then only in an awkward and imperfect manner; that he cannot take exercise, run, and move about as a normal child, and his foot and leg and the use thereof have become permanently and irreparably impaired.

It was further alleged that the defendant, at the time of the accident mentioned, and for a long period of time theretofore, had failed to maintain in front of this particular cage any suitable barrier or fence, but on the contrary at this particular spot the defendant had left an opening in the outer barrier or fence approximately 12 inches in width, through which opening said bear could and in fact did reach through and seize persons standing near said opening, and did reach through and seize plaintiff's son, Jack Wiggins; that the cage and outer fence hereinabove mentioned were erected by the defendant; that the defendant at all times knew that said cage was constructed of wire too small to resist the efforts of said animal to reach through the cage, and knew at all times that the holes and meshes in said wire netting were so large as to permit said animal to extend its foot and leg through the same, and knew at all times that the wires constituting said netting were insufficiently fastened to each other, and were insufficiently fastened to the upright and horizontal

bars constituting the framework of said cage, and knew that the outer fence or gate immediately in front of this cage contained the large openings mentioned; and it was further charged that the conduct of defendant in so constructing and maintaining said cage and outer fence was negligent; and it was further negligent in failing to close such opening in the outer fence and in failing to close the large holes in the wire netting constituting the walls of the cage.

It was further alleged that the defendant kept said wild, vicious, and ferocious animal in a cage exposed to public view, and knew that at all times the cage would be attractive and visited by women and children of immature age, and that the conduct of defendant as alleged "was negligent and that such conduct constituted and is affirmative negligence of said municipality, and said negligence resulted in creating a public nuisance and essentially dangerous condition, and that defendant knowingly permitted such nuisance and essentially dangerous condition to exist in said public park at a place and under circumstances calculated to cause injury to the members of the public who might be in said park."

It was further alleged that the negligence charged was the proximate cause of the injury, and the prayer was for the recovery of the sum of $1,500, expended by plaintiff E. J. Wiggins in the way of doctors' and hospital bills, nurses' hire and medicine, and the further sum in the way of damages of $25,-000, in that he will be deprived of the services of his son during minority. In behalf of the minor son, the prayer was for the sum of $25,000, caused and to be caused by reason of the permanent impairment and deformity of his leg, etc.

The defendant city appeared and answered by a general demurrer and a general denial. Upon the call of the case, on January 24, 1927, the city's general demurrer was presented, and the court, after having heard and considered the same, sustained it, and, the plaintiffs having declined to amend, it was further ordered that the suit be dismissed, to all of which the plaintiffs excepted and have duly prosecuted this appeal.

The appellee city, on December 14, 1924, pursuant to what is known as the home rule amendment of the Constitution, adopted the charter under which it has been acting. It is provided in section 1, c. 18, of that charter, that:

"Within thirty (30) days after the adoption of this charter and the qualification of the councilmen thereunder, there shall be appointed by the city council a board consisting of five members, composed of both men and women, to be known as the park board. No person shall be eligible to appointment on said board who is not a citizen of the United States and a resident of the city. The members of said board shall serve without compensation."

Sections 4 and 6 of said charter read as follows:

"4. The park board shall, subject to the authority of the city council, have the exclusive control, management, and maintenance of all the public parks, parkways, lakes, water parks, municipal squares, improved or unimproved, and the grounds surrounding all municipal buildings (except school buildings) now owned or controlled, or which may hereafter be acquired by the city of Fort Worth either within or without the corporate limits of the city."

"6. The park board shall have power to appoint and employ a superintendent and such other officers and assistants and laborers as it may deem necessary for the efficient administration of the affairs of said department; prescribe and fix their duties, authority, compensation, and qualifications as to residence or otherwise. It shall have the management and disposal of all funds legally apportioned or received from any source for the support and maintenance of the said public parks and grounds. It shall have power to establish rules and regulations for the conduct of its officers and employees, and may require adequate bonds from any or all of them, except laborers, for the faithful performance of their duties, in such amounts as may be fixed by it; such bonds to be approved by the city council and filed in the office of the city secretary. It shall have the power to formulate and adopt rules and regulations for the government of said parks and other grounds under its jurisdiction. The park board shall organize by electing one of its members president, one vice president, and one secretary."

Section 7 of the chapter provides that the city council, when levying taxes, shall levy an ad valorem tax of not less than 9 cents on each $100 of assessed value of all real and personal property in the city not exempt, for the use and benefit of this department, in addition to which the department is allowed—

"all the receipts and revenues arising from the operation of the various public parks and grounds within its jurisdiction, save and except the revenues arising from the swimming pools and from other forms of recreational activities set apart by this charter for the use and benefit of the recreation board. * * *"

[1] Upon the foregoing state of the record, the appellee city seeks to sustain the trial court's judgment on the theory that, in the control, operation, management, and maintenance of the public parks in the city of Fort Worth, the park board is exercising powers conferred upon it by the state for essentially public purposes pertaining to the proper administration of laws enacted in the furtherance of the general policy of the state, and that hence no suit can be maintained against the city of Fort Worth to recover damages for the negligent act or omission of any of its employees, servants or agents in the exercise of the powers conferred. In the general acceptance of the term, a public park is said to be a tract of land, great or

small, dedicated and maintained for the purposes of pleasure, exercise, amusement, or ornament; a place to which the public at large may resort to for recreation, air, and light. Such purposes are governmental in design, in that by their unrestricted use the health and pleasure of the people at large may be benefited. Such purpose is manifested in this state by legislative provisions. We find in title 103 of the Revised Statutes of 1925 that our Legislature has provided for state parks and a board for the government of the same, and also authorized each commissioners' court to establish and maintain county parks, and further provides (article 6080) that "the governing body of any incorporated city may purchase, improve and maintain land for use as city parks." And the great weight of authority seems to be that, generally speaking, municipalities establishing and maintaining public parks, used exclusively for public purposes and from which no income is received, cannot be made liable for negligence in their construction, management, or maintenance. See McQuillin on Municipal Corp. vol. 6, § 2672. In the case of the City of Galveston v. Posnainsky, 62 Tex. 127 (50 Am. Rep. 517), Judge Stayton, of our Supreme Court, said:

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state —they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power. * * *"

In the case of Board of Park Commissioners of the City of Louisville v. Prinz, 127 Ky. 460, 105 S. W. 948, the Kentucky Court of Civil Appeals said:

"Viewing the matter from this standpoint, the parks of the city occupy towards it and its inhabitants the same relation as do hospitals and other public institutions useful and necessary in the preservation of the health, safety, and morals of the people. And, although there is conflict in the authorities, the decided weight of the adjudged cases favors the view that neither municipal corporations nor bodies such as appellant, when exercising exclusively public functions enjoined by law for the benefit of the general public, are liable to suit for the personal tort or negligence of an agent, servant, or employee. * * *"

The Supreme Court of Minnesota, in the case of Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860, had this to say:

"Is a city which equips its public parks with instrumentalities for diversion and exercise, for the free use of its inhabitants, liable in damages to one injured in their use because of negligent construction or maintenance? * * * In the discharge of duties placed on municipal corporations by law, they and their servants are regarded as governmental agencies, and not answerable for negligence at the suit of a private party. Especially is this true of quasi municipal corporations. * * *

"Cities, through park and school boards, have of late provided playgrounds equipped with various instrumentalities for exercise and amusement. Where this is done for the public good and gratuitously, the cities and their servants are to be regarded as agencies of the government, and are not acting in a proprietary character. The weight of authority and the better reasoning is to that effect, as will be found upon examination of the opinions above cited. * * *

"It seems to us that the law has heretofore been considered established in this state that, with the single exception of streets, municipalities are not liable in damages for negligence in performing their governmental functions. If the exception is to extend to parks and playgrounds, the Legislature and not the courts should determine the question. It is one of expediency. If cities are to be subject to the risk of damage suits, they may well hesitate to acquire and equip public parks and school playgrounds so as to give the public the full measure of recreation and benefit obtainable therefrom. To impose liability is practically to make municipalities insurers against defects in public parks and in the appliances therein provided for public enjoyment, for we know how prone juries are to brush aside the questions of contributory negligence and unavoidable accidents and find in favor of the injured where a defendant has means at command. These matters and others relating to public welfare and individual rights with regard to the establishment and proper maintenance of public parks should be considered by the Legislature before imposing liability upon the municipality for defects therein."

See, also, Jones v. City of Atlanta, 35 Ga. App. 376, 133 S. E. 521; Autrey v. City Council of Augusta, 33 Ga. App. 757, 127 S. E. 796; Cornelisen v. City of Atlanta, 146 Ga. 416, 91 S. E. 415; Heino v. City of Grand Rapids, 202 Mich. 363, 168 N. W. 512, L. R. A. 1918F, 528, by the Supreme Court of Michigan; Bolster v. City of Lawrence, 225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285; Gensch v. City of Milwaukee, 179 Wis. 95, 190 N. W. 843, by the Supreme Court of Wisconsin; Bisbing v. Asbury Park, 80 N. J. Law, 416, 78 A. 196, 33 L. R. A. (N. S.) 523 (New Jersey decision); Alder v. Salt Lake City, 64 Utah, 568, 231 P. 1102, by the Supreme Court of Utah; Epstein v. City of New Haven, 104 Conn. 283, 132 A. 467; Kellar v. City of Los Angeles, 179 Cal. 605, 178 P. 505, by the Supreme Court of California; Nelson v. City of Spokane, 104 Wash. 219, 176 P. 149, by the Supreme Court of Washington; Mayor and City Council of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, by the Supreme Court of Tennessee; Vanderford v. City of Houston, 286 S. W. 568.

The case last cited, which was by the Court of Civil Appeals at Galveston, is one in which

Vanderford sued the city of Houston for damages occasioned by the death of the plaintiff's child, which it was alleged was caused by the negligence of the city of Houston, its agents and servants. It appeared that the city of Houston owned and operated a number of parks and playgrounds, in one of which was maintained a concrete pool approximately 32 feet in width and 72 feet in length, with varying depths from 29 inches to approximately 3 feet or more; that this pool was designed and built as a wading pool for children, and as such was used by the children of that neighborhood and adjoining vicinity. It was alleged that the plaintiffs' minor child, aged 2 years, while playing around the edge of the pool, was caused to fall into the same and drown. Negligence on the part of the city was alleged in that no guard or other attendant was present at or near the pool, and in that the city failed to provide an adequate number of attendants or guards, and in not having the pool properly inclosed with sufficient fencing or railing or other barrier, so as to prevent children of tender and indiscreet years from gaining access to said pool. To the petition so alleging, the defendant city presented a general demurrer, which was sustained by the trial court. On appeal, the Galveston Court of Civil Appeals held that the demurrer was properly sustained on the ground that in maintaining the park and pool, the city was exercising a governmental function. The court cited, among others, the case of City of Louisville v. Prinz, 127 Ky. 468, 105 S. W. 949, cited above, and also the case of City of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, and says:

"It seems to us the rule announced in the cases we have cited is founded in wisdom, and that the public welfare will be best subserved by its enforcement by our courts, even though it may result in hardship in individual cases. The great benefit of public parks in preserving the public health in our populous cities and in conducing to the happiness and general welfare of the citizens, especially children, can hardly be overestimated. If a city should be held liable for any injury caused by negligent acts or omissions of its employees in charge of its public parks, the hazard of the pecuniary loss which it might thereby sustain would greatly hinder, if not wholly prevent, it from providing these places which contribute so much to the general welfare."

It was stated in the argument before us on the submission of this case that the case of Vanderford v. City of Houston, from which we have just quoted, was made the basis of the trial court's ruling on the demurrer in question. We have not found where the case has been passed on by our Supreme Court, or either section of the Commission of Appeals.

[2] Our investigations, however, have led us to the conclusion that there are at least two exceptions to the general rule of nonliability indicated by the foregoing authorities (neither of which appear in the case of Vanderford v. City of Houston), and these exceptions we think are generally recognized in the authorities stating the general rule. For instance, in McQuillin on Municipal Corporations, § 2672, hereinabove cited, it is said:

"If an income is derived by a municipality from particular property owned or managed by it, it is liable for negligence in the care and management thereof."

An application of the exception thus stated by McQuillin is to be found in the case of City of Belton v. Ellis, 254 S. W. 1023, by the Austin Court of Civil Appeals, writ of error refused. In that case it appears that the city was authorized to own and maintain a bathing pool, supplied with water in connection with its waterworks system. The bathing pool was a public utility, and fees were charged for using the same. The plaintiff was injured in going down a slide into the pool. The jury found that the city was negligent in the construction of the slide, and the plaintiff recovered judgment for the resulting damages, such judgment being affirmed by the Court of Civil Appeals.

[3] Another exception is thus stated in the case of Vanderford v. City of Houston:

"This rule of exemption should not apply where the negligence causing the injury is the affirmative negligence of the municipality, acting through its corporate officers, in creating a public nuisance or any essentially dangerous condition, or knowingly permitting such nuisance or condition to exist in a public park or other place where it is likely to cause injury. In such case it should not be held that the city, in creating or knowingly permitting the nuisance or dangerous condition to exist, was exercising a governmental function."

In 20 R. C. L. p. 647, § 14, it is said, among other things:

"* * * It has been frequently held that cities and towns are not liable for injuries occasioned to people using public parks, nor for the negligent conduct of park commissioners acting within the scope of their authority. One exception to the general rule is that a municipality may not maintain a public nuisance, even where it is performing a governmental duty, and, if it does and injuries result therefrom, it is liable"—citing Harper v. Topeka, 92 Kan. 11, 139 P. 1018, 51 L. R. A. (N. S.) 1032; Bernstein v. Milwaukee, 158 Wis. 576, 149 N. W. 382, L. R. A. 1915C, 435.

A "nuisance" is defined as "anything that worketh hurt, inconvenience, or damage." See 5 Words and Phrases, p. 4855, title "Nuisance." See, also, Black's Law Dictionary, (2d Ed.) p. 835, title, "Nuisance," and decisions there cited.

In the case of City of Fort Worth v. Crawford, 74 Tex. 404, 12 S. W. 52, 15 Am. St. Rep. 840, it was held by our Supreme Court, quoting from the headnote:

"When a city has ample power to remove a nuisance that is injurious to the safety or im-

pairs the convenience of its citizens, or when in the prosecution of a public work it creates a nuisance (or permits it to remain), it is liable for all the injuries that result from a failure on its part to properly exercise the power possessed by it and for the injuries resulting from its unlawful acts."

[4-7] We are of the opinion that the allegations of the plaintiff's petition brings this case within at least one of the exceptions to the rule of nonliability. There is no allegation to the effect that the swimming pool and other recreational features of Forest · Park (the revenues of which are by implication reserved for the use and benefit of the city under the terms of the exception stated in section 7, c. 18, of the charter, hereinabove quoted) are maintained by the city for its benefit in a proprietary sense, with the zoo and wild and other animals as incidental means of increasing revenues. So that the judgment below cannot be disturbed on the ground of the exception to the general rule stated in section 2672, vol. 6, of McQuillin on Municipal Corporations, and which was applied and given effect in the case of City of Belton v. Ellis (Tex. Civ. App.) 254 S. W. 1023.

We have concluded, however, that the construction of the cage described in the petition and the maintenance of the dangerous animal therein, constitutes a dangerous condition and situation that may be properly termed a nuisance. The city, under the terms of its charter, has ample power to abate any and all kinds of nuisances or any structures that constitute danger to life or limb of its occupants, and, while in general terms, the management and control and operation of the public parks of the city is committed to the park board, the charter expressly reserves to the city the power of control. Such power is expressly conferred in section 4, c. 18, of the charter, thus vesting the final supervisory control in the city council. With the power of control thus imposed on the city council, the correlative duty of the council is to so supervise and control the action of the park board as to prevent or abate public nuisances or structures dangerous to the general public. The park board, as we view that body, is not, under the law, a corporation or other legal entity that may sue or be sued, but merely constitutes an agency of the city through and by means of which the city council may accomplish its purposes.

[8] The appellee city seeks to sustain the judgment below on the further ground that the plaintiff's petition fails to allege the facts constituting a prerequisite to a recovery required by section 27, c. 28, of the charter of the city. The section relied upon thus reads:

"The city of Fort Worth shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, sidewalk, highway or grounds or public works of the city or from any obstruction therein, unless the specific defect or obstruction causing the damage or injury shall have been actually known to the city engineer by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage, or unless the attention of the city council or the city engineer shall have been called thereto by notice in writing at last twenty-four hours prior to the occurrence of the injury or damage, and proper diligence had not been used to rectify the defect or obstruction after actually known or called to the attention of the city council or the city engineer, as aforesaid."

A similar provision in the charter of the city of Dallas seems to have been upheld in the case of Lee v. City of Dallas (Tex. Civ. App.) 267 S. W. 1014. It is evident that the provision quoted is very stringent and defensive in character, and if given literal effect in its application must result in many cases in denying relief when otherwise obtainable. While it is true, as urged, that the plaintiff's petition contains no allegation that the attention of the city council or city engineer had been called to the dangerous condition in the park complained of by notice in writing given at least 24 hours prior to the occurrence of the injury, the petition does allege, in substance, that the city owned the park, had collected, among others, the known wild and dangerous animal in question; that the city maintained said animal in a cage described in the petition; that such cage was constructed and maintained by the defendant; that the defects in the wire netting constituting the walls of the cage had existed long prior to the accident and were known to the defendant; that the defendant, at all times, knew that the vicinity of the cage would be visited by women and children of immature age, etc. As against the general demurrer, we think these allegations sufficiently charge actual knowledge and notice to the city. If the city in fact secured the wild animal, constructed the cage knowing the dangerous character of the animal and of the defects in the cage and of the attractive nature of the situation to children, and long so maintained it, we think the object of the charter provision sufficiently attained.

Our Supreme Court, in the case of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693, had occasion to construe a similar provision in the charter of the city of Houston. Isaacks' wife had been injured on one of the streets in Houston by reason of the wagon, in which she was riding, going into a hole in the street. The hole had been left in the street by a graveling contractor. The city, however, stopped his work and apparently took over the job, and the excavation was left as this contractor had made it. The court held that the provision of the city charter referred to, requiring the giving of notice, should not apply where the injuries were caused by

the action of the city itself. The court said, in part:

"There may be some reason in requiring notice to the city authorities of a defect accruing from ordinary causes, such as the action of floods, the use of the street by the public, or it may be said from any cause except by the action of the city itself. * * * The city is not sought to be held liable for any injury caused by a defect accruing from any extrinsic cause whatever, but for having by its own procurement made the street unsafe and knowingly left it in that condition. * * * Under these circumstances, we are of opinion that no proof of a written notice was necessary in order to hold the city liable for the injury complained of in this case."

Of like effect are the cases of Dallas v. Shows, 212 S. W. 633, and Willis v. San Antonio, 280 S. W. 569, both by the Commission of Appeals.

We conclude that, as against a general demurrer, the plaintiff's petition, indulging all of its reasonable intendments, was sufficient to take the case to the jury on the facts, and that hence the trial court erred in sustaining appellee's general demurrer and in dismissing the case.

It is accordingly ordered that, for the reasons stated, the judgment below be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.