**Robert Lee CHAMBERS, Appellant,**

v.

**CITY OF DAYTON, Appellee.**

No. 7099.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 23, 1969.

Motion for Rehearing Overruled
Nov. 20, 1969.

R. E. Biggs, Liberty, for appellant.

Daniel & Morrison, Liberty, for appellee.

KEITH, Justice.

Chambers, as plaintiff, brought this suit to recover damages for personal injuries he sustained when he was injured while working upon the construction of a sanitary sewer system for the defendant, City of Dayton. The parties will be designated as they appeared in the trial court. The defendant's motion for summary judgment, predicated upon the proposition that in the construction of the sanitary sewer system it was acting in a governmental capacity, was sustained, from which the appeal is taken.

There were and are no disputed facts surrounding the work being done by plaintiff at the time he received his injuries. He alleged that he was engaged in the construction of a sanitary sewer system, just as the affidavits of the City averred. The single point upon which the appeal is predicated contends that at the time plaintiff received his injuries, the City was "acting in a private capacity as a corporation." We disagree and affirm the judgment of the trial court.

Plaintiff's counsel makes an ingenious argument in support of his position that the City was acting in a proprietary capacity in constructing the addition to its sewer system. The contention, as expressed in the conclusion to his brief, proceeds along these lines: Plaintiff was seriously injured while working at the bottom of a ditch, which "when completed [was] to contain a sewer to serve only a small segment of the citizens of said city. The part of the sewer line under construction was not connected in anywise to the citie's [sic] sewer system, and the plaintiff was not engaged in the operation or maintenance of the citie's [sic] sewer system. Thus the plaintiff was not engaged in a strictly governmental activity when injured, but in a proprietary chore." To this, plaintiff adds, that when the line was completed, the City would charge the citizens a fee for the use of the system, "and thereby profit from the construction of said sewer line." (This last statement lacks any record support.)

Plaintiff relies upon three cases: City of Fort Worth v. Wiggins, 5 S.W.2d 761 (Tex.Com.App., 1928); Jones v. City of Texarkana, 100 S.W.2d 198 (Texarkana Tex.Civ.App., 1936, error dism.); and Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992 (1949). Defendant brings forward in support of its position, the following cases: Bowie v. City of Houston, 152 Tex. 533, 261 S.W.2d 450 (1953), refusing the writ of error to the Galveston Court of Civil Appeals in the opinion reported at 259 S.W.2d 765 (1953); City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 (1932); Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941); and Ballard v. City of Fort Worth, 62 S.W. 2d 594 (Fort Worth Tex.Civ.App., 1933, error ref.).

In our case plaintiff alleged that he was engaged in the construction of a *sanitary* sewer as distinguished from a *storm* sewer. Thus, this language from *Bowie* (259 S.W. 2d at 767) disposes of his reliance upon *Dilley, supra:*

"The construction and operation of storm sewers by a city is the exercise of its proprietary function, while the construction and operation of sanitary sewers is the exercise of the city's governmental function. Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 922 [sic], 993."

The opinion in Jones v. City of Texarkana, supra, does not indicate the type of sewer line then under construction. Judge Griffin's citation of *Jones* in *Dilley* (222 S.W.2d at 993) would indicate that the sewer involved in *Jones* was not a sanitary sewer, otherwise the case is not in harmony with the line of cases there cited. Assuming *Jones* to involve a storm sewer, its appearance in *Dilley* is perfectly consistent with the result reached there. If *Jones* involved a sanitary sewer, it is not now the prevailing law and we decline to follow it.

*Wiggins,* relied upon by plaintiff, has some relatively loose language in the opinion from which all who seek relief from the doctrine of governmental immunity may take solace. It was not, however, a case involving *any* type of sewer system, sanitary or otherwise, but involved a ferocious wild bear inadequately caged in a public park. Properly holding that the maintenance of a public park was a proprietary function, the Commission of Appeals also upheld the fixing of liability upon the alternative nuisance theory advanced by the Court of Civil Appeals. [5 S.W.2d at 764: "nuisance if the act were governmental," as mentioned by the Court of Civil Appeals at 299 S.W. 468, 472.]

Our case is ruled by the language found in *Bowie* (259 S.W.2d at 767):

"The *construction* of a sewage disposal plant by a city is as much the exercise of a governmental function as is the maintenance after it has been constructed. Ballard v. City of Ft. Worth, Tex.Civ.App., 62 S.W.2d 594, writ refused. The construction by the city of

the sewage disposal plant is as much an incident of discharging the duty imposed on it to dispose of sewage in a sanitary manner as is the maintenance of said sewage disposal plant after the same has been constructed." (Emphasis by the court.)

Despite comment that "[T]here have been hints in the past that the Texas Supreme Court may be becoming disenchanted with this troublesome doctrine" of governmental immunity,[1] it still has vitality. Burnett v. City of Houston, 442 S.W.2d 919, 920 (Houston Civ.App., 1969, error ref.).

 The judicially created doctrine of governmental immunity has acquired such a firm foundation in our case law that only the Supreme Court or the Legislature would be authorized to abolish the doctrine. See in this connection the comments of several members of the Supreme Court in Watkins v. Southcrest Baptist Church, 399 S.W.2d 530 (Tex.Sup., 1966), dealing with the kindred doctrine of charitable immunity. The 61st Legislature in 1969 took a forward, although perhaps incomplete, step in recognizing the fact that the doctrine of governmental immunity has outlived its usefulness[2] in the adoption of the "Texas Tort Claims Act," effective January 1, 1970 (Acts, 61st Legislature, Reg.Sess., 1969, Ch. 292, H.B.No. 456, designated as Vernon's Ann.Civ.St. Art. 6252–19, §§ 1–22, Vernon's Texas Session Law Service, No. 3, p. 874).

Granted that even the recent legislation on the subject is of little comfort to our plaintiff, we cannot, as an intermediate appellate court, either abolish or relax the doctrine of governmental immunity which denies to our plaintiff a recovery herein. The apt comments of Chief Justice Green in Luvaul v. City of Eagle Pass, 408 S.W. 2d 149, 152 (Corpus Christi Civ.App., 1966,

1. 22 S.W.Law Jrl., 209–210 (1968).

2. See Justice Norvell's comment upon Williams v. City of Detroit, 364 Mich. 231,

error ref. n. r. e.), followed in Burnett, supra, on this subject, are adopted here.

The judgment below was correct and is in all things affirmed.

111 N.W.2d 1 (1961) to be found in Watkins (399 S.W.2d at 533, fn. 4). Williams has an exhaustive treatment of both sides of the question.