No. 18,453.

JOHN W. HARPER et al., *Appellees*, v. THE CITY OF TOPEKA, *Appellant*.

SYLLABUS BY THE COURT.

1. CITY PARK—*Maintenance Thereof a Governmental Function.* The maintenance of a park by a city for the sole benefit of the public, and not for any profit or benefit to the municipal corporation, is a governmental or public function.

2. PETITION—*Allegations Therein Admitted by Demurrer.* The allegations of the petition generally, and especially as to the physical conditions of the pond in the park, are, by the demurrer, admitted.

3. POND—*In Public Park—Not an "Attractive Nuisance."* The pond as described, being a reproduction of a natural pond, is not an attractive nuisance.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed April 11, 1914. Reversed.

*W. C. Ralston,* city attorney, and *James W. Clark,* assistant city attorney, for the appellant.

*Otis E. Hungate,* and *William R. Arthur,* both of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: The appellees, in their petition, alleged that they are the father and mother of Matteson Harper, deceased; that on December 5, 1911, and prior thereto, the defendant city owned and maintained a public park, known as Central Park, within the limits of the city, and kept and maintained therein a pond of water which had been constructed by the city; that near the south end of the park the pond was seven or eight feet deep and on the date named was frozen over and covered with ice about one inch thick; that the park was in a residence portion of the city where many children lived and passed by; that the city kept and maintained open gates to the park and paths and walks therein upon which the public was permitted to walk, one of which paths was along the south end of the pond; that for a long time prior to the accident numerous children of the locality frequently resorted to the park to play and for amusement, and especially when the park was covered with ice to slide and skate thereon; that the city neglected to make any effort to keep the children from playing about the pond or from skating and sliding thereon, and provided no watchman to patrol the pond or to rescue children therefrom if any got into the pond; that on the above date Matteson Harper, then about seven years old, was going from the Central Park school, located west of Central Park, to his home on Western avenue in the city, and in so doing passed through the park and along the south bank of the pond, which was the direct route from the school to his home; that observing that the pond was frozen over and lacking in judgment and discretion by reason of his youth, he was attracted

thereby and went upon the ice to slide; that he broke through the ice, fell into the water and was drowned at a point where the water was eight feet deep; that the deceased did not know the dangerous condition of the ice but the condition was well known to the city, its officers, agents and employees; that when the deceased was drowned he was a healthy, strong boy and affectionate to his parents; that had he lived his services would have been of the value of $10,000 to the appellees, for which sum they prayed judgment.

To this petition the city filed a demurrer on the ground that the petition did not state facts sufficient to constitute a cause of action. Upon the hearing of the demurrer, it was overruled by the court and the city appeals.

Ordinarily, cities and other municipal corporations in the exercise of their governmental functions are not liable in damages for any neglect, or even wrongdoing, of their officers in the discharge of such duties unless such liability is expressly imposed upon them by law. (*Pfefferle v. Comm'rs of Lyon Co.,* 39 Kan. 432, 18 Pac. 506; *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490; *La Clef v. City of Concordia,* 41 Kan. 323, 21 Pac. 272; *City of New Kiowa v. Craven,* 46 Kan. 114, 26 Pac. 426; *City of Caldwell v. Prunelle,* 57 Kan. 511, 46 Pac. 949; 4 Dillon, Municipal Corporations, 5th ed., § 1660, p. 2895; 28 Cyc. 1305.) An exception to the rule has been made which holds cities liable for damages resulting from defects in their highways or certain conditions of notice. In *Jensen v. City of Atchison,* 16 Kan. 358, it was said:

"Cities, having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty of keeping them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty." (Syl. ¶ 1.)

In the second edition of the reports containing the latter case, numerous authorities are cited approving the doctrine. Neither counties nor townships, however, were held liable in this state for injuries caused by defects in bridges, culverts or highways until the enactment of chapter 237 of the Laws of 1887 (Gen. Stat. 1909, § 658). (*Eikenberry v. Township of Bazaar,* 22 Kan. 556; *Comm'rs of Marion Co. v. Riggs,* 24 Kan. 255; *Parr v. Shawnee County,* 70 Kan. 111, 78 Pac. 449.)

Another exception to the general rule stated as to the liability of cities in the state was adjudicated in *Kansas City v. Siese,* 71 Kan. 283, 80 Pac. 626. In that case the city was held liable in damages for maintaining an attractive nuisance in or adjacent to a street in a thickly settled district of the city, and the doctrine was reaffirmed in *Roman v. City of Leavenworth,* 90 Kan. 379, 133 Pac. 551. There are, however, limitations upon the application of the doctrine. In *Tavis v. Kansas City,* 89 Kan. 547, 132 Pac. 185, the following quotation from *Peters v. Bowman,* 115 Cal. 345, 47 Pac. 113, 598, was made with approval:

" 'The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different.' (p. 356.)" (p. 553.)

Harper v. City of Topeka.

The maintenance of the park as described in the petition is clearly a governmental function. The city as a corporation derives no benefit therefrom, but the park is maintained for the benefit of the public without regard to residence. The park is not a public highway, and unless the pond therein is an attractive nuisance the city can not be held liable for the accident upon any principle heretofore recognized by the courts of this state. As described in the petition, and as a matter of common knowledge, the park is not an annoyance to the public, but is a beneficent provision made by the city for open-air recreation and diversion. It adds to the happiness and healthfulness of the thousands who avail themselves of its benefits. The pond in the park adds to its beauty and is accessory to all the beneficent purposes for which the park was established and is maintained.

By the allegations of the petition it appears that the pond proved not only dangerous but destructive to the little boy who ventured thereon and who, by reason of his tender years, was incapable of appreciating and avoiding the dangers encountered. The suggestion in the petition that the pond should have been fenced by the city or that patrolmen should have been at the place to keep the boy from going upon the ice is evidently impracticable. A fence about the pond would disfigure the park and rob the pond of much of its attractiveness. So far as appears, the boy went there and upon the ice alone, and there was nothing to attract the attention of patrolmen if such had been employed to watch the pond. The pond was dangerous at the time only because covered with a thin coating of ice.

The pond appears to be of like character and, although made by the city, is virtually a reproduction of the ponds found in nature, and nature does not maintain attractive nuisances. That there was possible danger of a child going upon the ice and falling into the water is true, but such an accident is as likely to

occur on any like pond in nature. It has been said that there is possible danger in every step of life from the cradle to the grave, although the danger may not be foreseen. Every tree that stands in the park or in the city presents the possible danger that some boy may climb it and fall, to his injury or even death. Ordinary care requires only that means be taken to avoid such dangers as are reasonably to be apprehended—probable dangers, not possible dangers. The imminence of the danger is ordinarily the measure of care to be taken to avoid it. There seems to be no reason in this case to hold the city liable which would not have been equally cogent had the boy, in going to or from school, gone through a neighbor's pasture, with the owner's consent, and met a like fate upon a pond therein. We know of no rule that imposes higher care upon a city than upon an individual.

Much reliance is placed by the appellees in the case of *Bowden v. Kansas City*, 69 Kan. 587, 77 Pac. 573. The syllabus reads:

"A municipal corporation is performing a ministerial public duty in maintaining a fire station, and is liable in damages to an employee for personal injuries resulting from the neglect of the corporation to furnish him a reasonably safe place in which to work."

Notwithstanding the use of the word "ministerial" in the syllabus, the real principle involved was the relation of employer and employee as stated in the opinion.

We have examined the authorities cited by counsel on the question submitted for additional briefs, and also the collection of authorities in extended notes to three cases in 19 L. R. A., n. s., 1094-1136. The general rule we have stated is sustained by much the greater number of cases, and upon what appears to be the better reasoning, in cases brought against cities or municipalities where the question of immunity from liability is raised.

It is strenuously urged that a city should be liable for any defect or negligence in the maintenance of its

parks on the same grounds as in the maintenance of its highways. The necessities of public travel at all times and under all conditions presumably impelled the courts to make the exception regarding the maintenance of the highways in cities as we have noted. Like reasons do not seem to require the extension of the exception to the maintenance of parks; at least this has not been done in this state, and we do not feel that justice would be promoted by making the further exception.

On the facts stated in the petition, it does not appear that the pond is an attractive nuisance. The demurrer should therefore have been sustained.

The order and judgment is reversed.

WEST, J. (concurring specially) : I concur in the conclusion reached for the reason that no actionable negligence is shown by the allegations, but I do not think that the question of governmental function is in the case; neither am I ready to concede that the reproduction of a natural pond may not be as dangerous and attractive a nuisance as any other. The statutes seem to clothe the city with authority to maintain parks and likewise charge it with the duty of proper regulation and care. (Gen. Stat. 1909, §§ 831, 834.)