[L. A. No. 4294. In Bank.—January 28, 1919.]

WILLIAM HENRY KELLAR, Guardian, etc., Appellant, v. CITY OF LOS ANGELES et al., Respondents.

MUNICIPAL CORPORATIONS — PERSONAL INJURIES — NEGLIGENCE OF SERVANTS—LIABILITY.—A municipal corporation, in the absence of a statute imposing the liability, is not liable for personal injuries due to the negligence of the corporation's officers and employees, unless the negligence was in the matter of the exercise of functions private and proprietary in their nature as distinguished from functions purely governmental in nature.

ID.—MAINTENANCE OF SUMMER CAMP FOR CITY CHILDREN — GOVERN-
MENTAL FUNCTION—INJURIES TO INMATE—NEGLIGENCE OF SERVANTS
—NONLIABILITY OF CITY.—A municipal corporation in conducting
under authorization of certain provisions of its charter a summer
camp outside the corporation's limits, for the purpose of giving the
children of the city a vacation at certain prescribed charges to be
paid by them to the city, is engaged purely in the exercise of its
governmental function of maintaining the health of the children of
the city, and is not liable for injuries accruing to a minor by reason
of the negligence of its servants in the matter of caring for such
minor after he had accidentally been injured while an inmate of
such camp.

ID.—LOCATION OF SUMMER CAMP—CHARGE FOR PRIVILEGES—NATURE OF
FUNCTION NOT CHANGED.—There is no material difference between a
children's playground established and maintained by the city within
the city limits and a summer camp for the children of the city estab-
lished without such limits, in so far as the liability of the city for
the negligent acts of its servants is concerned, nor does the fact that
a small charge is made for the privileges of the camp change the
situation.

ID.—MAINTENANCE OF CHILDREN'S PLAYGROUNDS—GOVERNMENTAL FUNC-
TION.—Children's playgrounds and recreation centers established and
maintained by a city for the general use of the children of the city,
where so conducted as to partake in no degree of the nature of a
private business enterprise, do not substantially differ from a public
park in so far as the question of liability of the city for personal
injuries due to the negligence of its servants are concerned, since,
like such parks, they are referable solely to the duty of maintaining
the public health, and have nothing of the nature of an ordinary
business enterprise.

ID.—CITY OF LOS ANGELES—MAINTENANCE OF SUMMER CAMP FOR CHIL-
DREN—PRIVATE CAPACITY—CHARTER.—The city of Los Angeles is not
authorized by it's charter to maintain a summer camp for the chil-
dren of the city in any proprietary or private capacity.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Frank G. Finlayson, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. Ibeson Sweet, for Appellant.

Albert Lee Stephens, City Attorney, Wm. P. Mealey,
Deputy City Attorney, and Wm. D. Spaulding, Deputy City
Attorney, for Respondents.

ANGELLOTTI, C. J.—This is an appeal from a judgment entered in favor of the defendants upon sustaining their demurrer to plaintiff's third amended complaint. The only question presented by the briefs is as to the liability of the city of Los Angeles upon the facts stated in the complaint. It was sought by the action to hold the city liable for injuries accruing to the minor, a boy sixteen years of age, by reason of the alleged negligence of its officers and employees in the matter of caring for him after he had accidentally been injured while an inmate of a summer camp maintained by the city, through its board of playground commissioners, in the San Bernardino Mountains, "for the purpose of giving any children of said city, at certain prescribed charges to be paid by said children to said city, a vacation with care, board and lodging at said camp." The boy had gone to the camp under an agreement by which, in consideration of $3.75 per week to be paid by him, he was to be received and cared for, boarded and lodged for two consecutive weeks. While there he accidentally fell and broke his arm. The alleged negligence was a failure to provide necessary care and attention. in view of his injury, occasioning, it is alleged, very serious results.

It is thoroughly settled in this state that in the absence of a statute imposing the liability, a municipality is not liable on account of acts such as those here complained of, unless the negligence was in the matter of the exercise of functions private and proprietary in their nature as distinguished from functions purely governmental in nature. We have no statute imposing any such liability. There thus arises the question whether the city, in the operation of this summer camp, was acting in its governmental capacity, or in a private and proprietary capacity. The decisions, both of this court and of the courts of last resort in other jurisdictions, show that it is not always an easy matter to determine in which of these capacities a city is acting, and that it is extremely difficult, if indeed not impossible, to prescribe the test so exactly by general rule as to always clearly show to which class a particular activity of a municipality belongs.

The summer camp was conducted by the city under authorization of certain provisions of its charter. It is provided therein that the city shall have power "to provide . . . and to establish, own, equip, maintain, conduct and operate libra-

ries, readings rooms, . . . parks, playgrounds, gymnasiums, baths, public toilets . . . ; also any and all buildings, establishments, institutions and places, whether situated inside or outside of the city limits, which are necessary or convenient for the transaction of public business or for promoting the health, morals, education or welfare of the inhabitants of the city, or for their amusement, recreation, entertainment or benefit." (Charter, subd. 4, sec. 2, art. I.) In article XXVI of the charter, entitled "Playground Department," we find section 263, establishing a department of government, to be known as the playground department, under the management and control of a board of five commissioners, to be known as the board of playground commissioners. Section 267, contained in this article, provides: "All children's playgrounds, recreation centers and summer camps now or hereafter owned or controlled by the City of Los Angeles, either within or without its limits, shall be under the exclusive control and management of the Board of Playground Commissioners." Other sections of the article provide for the acceptance and use in acquiring, establishing, improving and maintaining of playgrounds, which, of course, includes children's recreation centers and summer camps, donations, legacies and bequests given for those purposes, and also that the city council may appropriate annually such amount as may be necessary therefor.

It seems to us that the function in which the city was thus engaged was purely in the exercise of the governmental power and the discharge of the governmental duty of maintaining the health of the children of the city, and was, therefore, essentially governmental in nature. It will not be questioned that a city is charged with such a duty of sovereignty as that of maintaining the public health, and that in any measures it may adopt solely for that purpose which are reasonably adapted to that end, it is acting strictly in a governmental capacity. In this connection certain language in the prevailing opinion in our recent decision in *Chafor* v. *City of Long Beach,* 174 Cal. 478, 487, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670], is in point. It was said: "Nor is it difficult to set forth the definition of governmental functions as applied to a city. Under the theory of the common law, that the municipality is protected from liability only

while exercising the delegated functions of sovereignty, the governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring for the poor, and the education of the young; and in the performance of these functions all buildings and instrumentalities connected therewith come under the application of the principle."

Children's playgrounds and recreation centers established and maintained by a city for the general use of the children of the city, where so conducted as to partake in no degree of the nature of a private business enterprise, do not substantially differ from a public park in so far as the question here involved is concerned. Like the public parks, they are referable solely to the duty of maintaining the public health, and have nothing of the nature of an ordinary business enterprise. While our attention has not been called to any decision of this court expressly deciding the question, it is clear, as was held in *Harper* v. *City of Topeka,* 92 Kan. 11, [51 L. R. A. (N. S.) 1032, 139 Pac. 1018], that the maintenance of a park by a city for the sole benefit of the public, and not for any profit or benefit to the municipal corporation, is a governmental or public function. (See, also, *Hibbard* v. *City of Wichita,* 98 Kan. 498, [L. R. A. 1917A, 399, 159 Pac. 399]; *Board of Park Commissioners* v. *Prinz,* 127 Ky. 460, [105 S. W. 948]; *Mayor etc. of Nashville* v. *Burns,* 131 Tenn. 281, [L. R. A. 1915D, 1108, 174 S. W. 1111]; *Nelson* v. *City of Spokane,* 104 Wash. 219, [176 Pac. 149]; *Blair* v. *Grainger,* 24 R. I. 17, [51 Atl. 1042].) As said in *Board of Park Commissioners* v. *Prinz,* 127 Ky. 460, [105 S. W. 948]: "They are essentially public places established for purely public purposes." In so far as any question here involved is concerned, there is no material difference between a children's playground established and maintained by the city within the city limits and the summer camp for the children of the city established without the city limits in the mountain region some distance therefrom. It is substantially in the nature of a children's playground for the benefit of the children of the city, located as it is for the purpose of giving the children the advantages of recreation under different conditions from those existing in the city. By reason of its remoteness from the city it is essential to its enjoyment by the children that board and lodging be furnished to those en-

joying the privileges thus afforded. This in no degree changes its nature. It rests on precisely the same basis as children's playgrounds and public parks within the city limits. It is conducted for the sole purpose of promoting the public interest by maintaining the public health, and has nothing of the character of a business enterprise. That a small charge is made upon those children going to and staying at the camp for the purpose of assisting in defraying the cost of maintenance of such children while at the camp does not change the situation. (See *Denning* v. *State*, 123 Cal. 316, [55 Pac. 1000] ; *Melvin* v. *State*, 121 Cal. 16, 22, [53 Pac. 416] ; *Blair* v. *Grainger*, 24 R. I. 17, [51 Atl. 1042].)

It may further be said that we do not think that the city of Los Angeles is authorized by its charter to maintain such an institution as this summer camp in any proprietary or private capacity. Any fair, reasonable, substantial doubt concerning the existence of power in a municipality as to such a matter as this must be resolved by courts against the municipality. (Dillon on Municipal Corporations, secs. 237, 239.) As we read subdivision 4 of section 2 of article I of the charter, it has to do with power granted for the purpose of the exercise of governmental functions alone. This is the result of a fair reading of the provision, and consideration of other subdivisions of the same section specifying matters in the nature of business enterprises in which the city may engage shows the correctness of this construction. Where it was thought advisable to confer a power as to any such matter it was carefully and specifically prescribed. And in subdivision 50 of the section, added by amendment in 1913, conferring most sweeping general power as to such matters, it was expressly provided "that under the authorization of this subdivision the City of Los Angeles shall not engage in any purely commercial or industrial enterprise not now engaged in by the city, except on the approval of a majority of the electors voting thereon at an election." It is not suggested that there was any provision for a summer camp prior to the adoption of this provision, or that the electors have ever authorized the maintenance of any institution of the nature of this summer camp, except as the same is authorized as a governmental function by subdivision 4 of the section.

In view of what we have said, we are of the opinion that there is no liability on the part of the city of Los Angeles on account of the matters alleged in the complaint.

The judgment is affirmed.

Sloss, J., Richards, J., *pro tem.*, Wilbur, J., Shaw, J., and Melvin, J., concurred.