## ROME et al. v. LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA. *

### No. 14930.

Court of Appeal of Louisiana. Orleans.

June 28, 1934.

Henican & Carriere, of New Orleans, for appellants.

Rene A. Viosca and Miller, Bloch & Martin, all of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiffs instituted this action ex delicto against the insurance carrier of the New Orleans city park improvement association, under Act No. 55 of 1930, for damages for the death of their minor son, who was drowned in the city park swimming pool, which is maintained and operated by the assured. The defendant filed exceptions of no right or cause of action on the ground that, as the association was exercising governmental functions delegated to it by the state of Louisiana in operating the city park and swimming pool located therein, it is exempt from liability for the torts of its agents and employees, and that, as the assured was not liable to the plaintiffs, the insurer is likewise without responsibility.

There was judgment sustaining the exceptions and dismissing the suit, and the plaintiffs have appealed.

The petitioners alleged that on Saturday morning, June 3, 1933, their son, Allen Rome, age 10 years, went to the city park swimming pool, paid the customary entrance fee of 25 cents, put on the bathing suit that was furnished him, and went into the pool with two companions; that at about ten minutes of 12 o'clock the same day his lifeless body was found at the bottom of the pool, where the water was nine feet deep; that the death of their son by drowning resulted from the negligent management and operation of the swimming pool in permitting it to become overcrowded with bathers and the carelessness of the life guards in charge in failing to observe, discover, or assist the boy while drowning, although they were in a position to have done so; that the New Orleans city park improvement association operated the swimming pool "as a proprietary function and for profit; that the fee charged for the use of the said pool by the said Association was and is the same fee as the customary fee charged by private corporations operating swimming pools in the City of New Orleans; that the Association caused a policy of insurance to be issued by the London & Lancashire Indemnity Company of America, in which the company agreed to indemnify the assured against loss by reason of the liability imposed upon it for damages on account of bodily injuries, including death at any time resulting therefrom, suffered by any person or persons not employed by the assured as the result of any accident or accidents occurring during the policy period."

The Louisiana Legislature of 1896 adopted Act No. 130, which reads, in part, as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That the park in the City of New Orleans known as the 'New Orleans City Park' be and is hereby placed under control and management of the 'New Orleans City Park Improvement Association,' incorporated under the laws of the State, by an act before Felix J. Dreyfous, Notary Public, on the 13th day of August, 1891. * * *

"Sec. 3. Be it further enacted, etc., That the duties of 'The New Orleans City Park Improvement Association' and the 'Audubon Park Association' shall be to take charge and supervision of the said parks, respectively, in their preservation and their improvement for public recreation as may be necessary, with a

*Rehearing granted Oct. 1, 1934.

view to the gradual improvement and ornamentation as places of resort and pleasure for the citizens of New Orleans.

"Sec. 4. Be it further enacted, etc., That for the purposes of the preservation, improvement, and beautifying of the said parks, and providing for the expenses incidental thereto, there shall in each year, be set aside by the Common Council of New Orleans, as a first item in its Budget, out of the Reserve Fund, a sum of at least thirty thousand dollars, one-half of which to go to the 'New Orleans City Park Improvement Association,' and the other half to the 'Audubon Park Association,' and shall be payable to said Associations, in the said proportions, whenever available, upon the receipt of the respective President and Treasurer of said Associations.

"Sec. 5. Be it further enacted, etc., That 'The New Orleans City Park Improvement Association' and the said 'Audubon Park Association' shall have power, and are hereby authorized to make and adopt such by-laws, rules and regulations for their own government and the government of the said parks in their respective control as they may deem necessary or proper, to elect and appoint such officers, committees and employees as they may consider proper, to prescribe and define their respective duties, authority, and the amount of their compensation; provided, that neither of said parks shall ever be held liable for any obligation contracted by said Associations, or either of them. * * *

"Sec. 7. Be it further enacted, etc., That the aforesaid portions of the 'Reserve Fund' to be so paid by the city of New Orleans, as well as all fines recovered, and other funds for park improvement shall be under the sole control of the said Associations respectively, to be by them expended and disbursed in such manner as they may deem most advantageous for the park under their control. And said Associations shall make to the City Council of New Orleans an annual report of the amount received, and how and where it has been expended or disbursed, and a biennial report of the same character to the Legislature."

Plaintiff's able counsel question the correctness of the decision of our learned brother below on two grounds:

First, that from the allegations of the petition, which must be accepted as true, since the issue is raised by an exception of no right or cause of action, it cannot be said as a matter of law that the association, in operating the city park swimming pool, was performing a governmental function which exempts it

from liability for torts, but, on the contrary, it appears that it was engaged in a proprietary function for profit and gain, as a fee of 25 cents was charged to the members of the public who used the pool; and, second, that, assuming the association was engaged in a governmental function in operating the pool and therefore exempt from liability for its torts, this immunity should be restricted to the association for claims made directly against it and should not be extended in favor of the insurance carrier, which issued a policy of public liability insurance to cover a claim such as is here presented.

In the case of Solomon v. City of New Orleans, 156 La. 629-633, 101 So. 1, 3, the court said:

"It seems to be universally recognized by the text-writers and by jurisprudence that the powers and obligations of a municipal corporation are of a two fold character: (1) Those that are of a public nature; and (2) those that are of a private nature. * * *

"The line of demarcation between where the powers of a municipal corporation as the agent of the state end, and those merely local, private, and for corporate purposes begin, is often difficult of determination. But it is quite clear that the distinguishing character of municipal authority determines the liability or nonliability of a municipality for injury and damage arising ex delicto. And in determining this question the rule is that the claim under which a municipality seeks exemption as being in the exercise of a governmental function must be strictly construed. Bennett v. New Orleans, 14 La. Ann. 120."

In Hall et al. v. City of Shreveport, 157 La. 589, 592, 102 So. 680, 681, we find: "It is well settled that the powers and obligations of municipal corporations are two-fold in character: Those that are of a public nature, and those that are of a private nature. As to the first, or public character of its powers and obligations, the municipal corporation represents the state, discharging duties incumbent upon the state. As to the second, or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals. In its public character, as the agent of the state, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents. In its private or proprietary functions it is held to the same responsibility as is a private corporation."

See, also, Manguno v. City of New Orleans (La. App.) 155 So. 41, decided May 21, 1934 (not yet reported [in State report]) and cases there cited.

In the case of Orgeron et ux. v. Louisiana Power & Light Co., 19 La. App. 628, 140 So. 282, this court traced the history of the rule that "the King can do no wrong" and the corollary thereof, "the sovereign may not be forced to submit to a suit." We pointed out the injustice which might well result from the application of that rule under modern conditions, with the sovereign, both national and state, and subdivisions thereof, engaging in so many activities, but that the great weight of authority favored the application of that doctrine. Consequently we declared that the question was one of economic policy which the courts were powerless to modify, and that, if any change was to be effected, it would have to come through the legislative department.

In Godfrey v. City of Shreveport, 6 La. App. 356, parents brought suit for damages for personal injuries sustained by their minor child, who was injured on a "chute" or slide placed in the municipal park of the city of Shreveport, which was maintained as a place of public amusement and playground for children by the city. The trial judge sustained an exception of no right or cause of action on the ground that the city was engaged in the performance of a governmental function and therefore exempt from liability for the torts of its agents. In affirming the decision, the Court of Appeal said:

"Public parks and playgrounds are established by municipalities to promote the general welfare of the public at large. As places of recreation and amusement such parks promote the health and education of the citizens. In establishing and maintaining them the municipality exercises that sovereignty delegated to it for the welfare of its inhabitants. It derives no corporate gain therefrom and has no proprietary or corporate interest therein. Electric light and waterworks plants, street railways, and the like, are in the nature of private corporate enterprises established for the purpose of municipal gain. In the establishment of such governmental agencies the municipality acts in a proprietary capacity and as to them under the law the same duty and responsibility is imposed as is imposed upon private corporations.

"But not so with reference to public parks. They are established to promote public health and education. It is almost universally held that the establishment of departments of police, schools, health and fire by cities is a governmental function."

Does the alleged fact that the association charged the customary fee of 25 cents for furnishing a bathing suit and admitting members of the public to the pool, take this case out of the category of a governmental function and place it in the class of cases of the performance of a proprietary act for pecuniary profit and gain? In the case of Godfrey v. City of Shreveport, supra, the court said:

"In the case of Bolster v. City of Lawrence (225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285), the court said, with reference to the liability of municipal corporations for negligence, etc.:

" 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability.'

"Our own courts have recognized this distinction in many cases."

See, also, Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Davis v. New Orleans Public Belt R. R., 155 La. 504, 99 So. 419, 31 A. L. R. 1303.

In Caughlan v. City of Omaha, 103 Neb. 726, 174 N. W. 220, 221, it is stated: "On the question presented the courts of the country, like the parties hereto, seem to entertain diverse views. The nature of the functions exercised by a city in maintaining a public park has been a subject of extended judicial discussion in recent years. The weight of authority supports the fundamental proposition of law that a city in maintaining a public park performs a public or governmental duty. Bisbing v. Asbury Park, 33 L. R. A. (N. S.) 523, note (80 N. J. Law, 416, 78 A. 196). The municipal purpose is different from that of an ordinary corporation conducting a business enterprise for private gain. Health, comfort, recreation, sanitary conditions, and better environments, resulting in order, happiness and increased usefulness from a public standpoint, are governmental aims in the maintenance of a public park or a municipal beach. To extend these privileges without compensation or discrimination to the poor and the other classes alike is above the aim of private or individual enterprise generally. To attain these objects is a fundamental purpose of government. Consequently, most courts, in determining liability for negligence in cases of

this kind, make a distinction between governmental functions and private enterprise. The rule generally adopted, therefore, is that, in absence of statute, a city, in maintaining a public park or a municipal beach, is not pecuniarily liable for the negligence of city officers while exercising functions relating to this feature of municipal government. Bisbing v. Asbury Park, supra; Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, 51 L. R. A. (N. S.) 1032; Bernstein v. City of Milwaukee, 158 Wis. 576, 149 N. W. 382, L. R. A. 1915C, 435, and cases cited in note; Nemet v. City of Kenosha, [169 Wis. 379], 172 N. W. 711. Neither the character of the municipal function or the exemption from liability is changed by a small incidental revenue derived from the rental of city buildings used in connection with the public park or the municipal beach. Kellar v. City of Los Angeles, [179 Cal. 605], 178 P. 505."

In Kellar v. City of Los Angeles, referred to in Caughlan v. City of Omaha, supra, the plaintiffs sought to hold the city liable for damages for a broken arm sustained by their son through the alleged negligence of the city's employees, who operated and maintained a summer camp for boys in the San Bernardino Mountains. The camp was established through the board of playground commissioners of the city in accordance with its charter for the purpose of giving the children thereof a vacation. The money realized from board and lodging, for which the inmates of the camp paid certain prescribed charges, went exclusively to maintain the resort. The Supreme Court of California, in affirming the decision of the lower court, which sustained a demurrer to the plaintiff's complaint, said:

"It is thoroughly settled in this state that, in the absence of a statute imposing the liability, a municipality is not liable on account of acts such as those here complained of, unless the negligence was in the matter of the exercise of functions private and proprietary in their nature as distinguished from functions purely governmental in nature. We have no statute imposing any such liability. There thus arises the question whether the city, in the operation of this summer camp, was acting in its governmental capacity, or in a private and proprietary capacity. The decisions, both of this court and of the courts of last resort in other jurisdictions, show that it is not always an easy matter to determine in which of these capacities a city is acting, and that it is extremely difficult, if indeed not impossible, to prescribe the test so exactly by general rule as to always clearly show to

which class a particular activity of a municipality belongs. * * *

"It seems to us that the function in which the city was thus engaged was purely in the exercise of the governmental power and the discharge of the governmental duty of maintaining the health of the children of the city, and was therefore essentially governmental in nature. It will not be questioned that a city is charged with such a duty of sovereignty as that of maintaining the public health, and that in any measures it may adopt solely for that purpose, which are reasonably adapted to that end, it is acting strictly in a governmental capacity. In this connection certain language in the prevailing opinion in our recent decision in Chafor v. City of Long Beach, 174 Cal. 487, 163 P. 670, L. R. A. 1917E, 685, Ann. Cas. 1918D, 106, is in point. * * *

"Children's playgrounds and recreation centers established and maintained by a city for the general use of the children of the city, where so conducted as to partake in no degree of the nature of a private business enterprise, do not substantially differ from a public park in so far as the question here involved is concerned. Like the public parks, they are referable solely to the duty of maintaining the public health, and have nothing of the nature of an ordinary business enterprise. While our attention has not been called to any decision of this court expressly deciding the question, it is clear, as was held in Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, 51 L. R. A. (N. S.) 1032, that the maintenance of a park by a city for the sole benefit of the public, and not for any profit or benefit to the municipal corporation, is a governmental or public function. See, also, Hibbard v. City of Wichita, 98 Kan. 498, 159 P. 399, L. R. A. 1917A, 399; Board of Park Commissioners v. Prinz, 127 Ky. 460, 105 S. W. 948; Mayor, etc., [of Nashville] v. Burns, 131 Tenn. 281, 174 S. W. 1111; Nelson v. City of Spokane, [104 Wash. 219], 176 P. 149; Blair v. Granger, 24 R. I. 17, 51 A. 1042. * * *

"By reason of its remoteness from the city it is essential to its enjoyment by the children that board and lodging be furnished to those enjoying the privileges thus afforded. This in no degree changes its nature. It rests on precisely the same basis as children's playgrounds and public parks within the city limits. It is conducted for the sole purpose of promoting the public interest by maintaining the public health, and has nothing of the character of a business enterprise. That a small charge is made upon those children going to and staying at the camp for the pur-

pose of assisting in defraying the cost of maintenance of such children while at the camp does not change the situation. See Denning v. State of California, 123 Cal. 316, 55 A. 1000; Melvin v. State, 121 Cal. 16, 22, 53 P. 416; Blair v. Granger, supra.

"It may further be said that we do not think that the city of Los Angeles is authorized by its charter to maintain such an institution as this summer camp in any proprietary or private capacity."

In the case of Bodenheimer v. Confederate Memorial Ass'n (D. C.) 5 F. Supp. 526, page 528, the plaintiff sued to recover damages for personal injuries as the result of falling over a concrete walk which was alleged to have been permitted by defendant's employees to remain in a dangerous and unsafe condition. Defendant pleaded that it was a charitable institution and could not be held liable for damages sustained as a result of the negligence of its employees, charged in the declaration. It appeared that the defendant was a corporation chartered under the laws of Mississippi; its purposes being educational, patriotic, and historical. It maintained a place called "Battle Abbey," where all kinds of historical relics were on exhibition, and charged a small fee to those who visited the museum. The testimony showed that the funds derived from admission fees were insufficient to meet the necessary expenses of maintaining the place and that there had never been any profit realized from its operation. It was a nonstock corporation. The district judge quoted with approval from Professor Lile's Notes on Municipal Corporations (1922 Ed.) pp. 101, 102, the following language: "It is especially to be noticed that the circumstances that some or all of the beneficiaries of such trusts are charged fees for services rendered or benefits enjoyed, does not alter the nature of the trust, since the fees so received are converted into the corporate treasury and become at once as completely dedicated to the purposes of the trust as the original corpus. One distinctive feature of such corporations is that no dividends are paid out as private profit to individuals. A college or hospital, therefore, requiring payment of fees or other compensation from students or patients may be as completely and technically a charitable institution as a like institution whose services are free to all who apply."

The court said: "That the query above stated must be answered in the affirmative is hardly open to serious controversy. It is at once apparent from the charter and the testimony that all of defendant's purposes and activities are absolutely foreign to any thought of pecuniary or personal profit, and that the real purpose of its incorporation and perpetuation is essentially a public purpose."

There are cases which apparently announce a view contrary to that hereinabove discussed. In Burton v. Salt Lake City, 69 Utah, 186, 253 P. 443, 445, 51 A. L. R. 364, the suit was for damages for the death of a girl, who lost her life in a municipally owned and operated swimming pool through the alleged negligence of the employees of the city. In the complaint it was alleged that the city operated the bathhouse and swimming pool as a means of revenue and profit by charging a fee for admission thereto. The defendant filed a demurrer, which, for the purpose of the pleading, admits the facts alleged in the complaint. The court pointed out that it was the law of the state of Utah that a municipality could not be held liable for the torts of its employees or agents, where they were performing a governmental function, and that it had been held that the operation of public parks and playgrounds for public recreation and health free of charge was a governmental function. In overruling the demurrer, the court said:

"The last two cases referred to clearly point out the test which is generally, if not universally, applied respecting liability of cities. That test is very tersely stated in the Massachusetts case just referred to, and was approved and adopted by this court in Alder v. Salt Lake City, [64 Utah, 568, 231 P. 1102], supra. The test reads:

" 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability.'

"True it is, as suggested by counsel for the city, that, where the municipality is clearly discharging governmental functions in conducting a particular enterprise, or is conducting it entirely in the interest of the public health or welfare, etc., the mere fact that a fee is exacted or a charge is made is not conclusive against the city. That fact is clearly pointed out by the Supreme Court of California in Kellar v. City of Los Angeles, supra. Where, however, the facts are as they are alleged in the complaint in the case at bar, all of which are admitted by the demurrer, no case has been cited, and we think none can be found, where it is held that the municipality exercises governmental functions in owning

and operating bathhouses and swimming pools. Is it not pertinent to ask, What governmental function does Salt Lake City exercise in conducting the bathhouses and swimming pools in question? In what way does it discharge any governmental function? What is it that it governs or regulates or controls of a public or governmental character? In view of the allegations of the complaint, does the city not own, operate, and conduct the bathhouses and swimming pools in question precisely the same as they would be conducted under private ownership? We confess our utter inability to perceive any act of a governmental nature which the city exercises in owning, operating, and conducting the bathhouses and swimming pools referred to in the complaint."

In the case of Alder v. Salt Lake City, 64 Utah, 568, 231 P. 1102, 1103, the suit was for damages for personal injuries alleged to have been sustained by the plaintiff at a public park owned and operated by the city, which had staged a Fourth of July pageant; the public being admitted without charge. The stand in which the plaintiff was seated gave way, and it was alleged that the city was at fault in negligently constructing it. The defense was that defendant's employees were engaged in a governmental function. In sustaining the demurrer and dismissing the suit, after having referred to a number of authorities supporting both views, the court said: "The maintenance of the public park and the presentation of the pageant on the 4th of July by the defendant city were clearly matters of public service for the general and common good, designed exclusively for the social advantage, entertainment, and pleasure of the general public; and from which the city could derive no benefit in its corporate or proprietary capacity."

In Foss v. City of Lansing, 237 Mich. 633, 212 N. W. 952, 52 A. L. R. 185, the plaintiff's declaration alleged that she had suffered personal injury and property loss as a result of the city garbage truck negligently running into her automobile. The trial judge directed a verdict for the defendant on the ground that the evidence showed that the city was engaged in a governmental function. The evidence showed that the city operated a garbage collection and disposal system and charged the users thereof a certain stipulated amount. As an auxiliary of the system, a farm was maintained where some of the garbage was fed to hogs, which were later sold, and the proceeds went to help reduce the cost of garbage disposal. The court said: "The question then is, Did the fact that there is an incidental profit in the disposal of the garbage deprive the city of the exemption claimed?"

After discussing a number of authorities, the court concluded: "Whatever the holdings may be elsewhere, we are of the opinion that the rule in Michigan is that, if the municipality is engaged in a governmental work with an incidental profit, it is liable the same as a private corporation would be."

In Ostrander v. City of Lansing, 111 Mich. 695, 70 N. W. 332, 333, it was held that, where the city charged a fee to the inhabitants for the privilege of connecting with the sewer, and the plaintiff was injured through the negligence of the city employees, he was entitled to recover damages in tort.

In the case of Hodgins v. Bay City, 156 Mich. 692, 121 N. W. 274, 276, 132 Am. St. Rep. 546, it was held that, where the city furnished electricity to its inhabitants for remuneration, it was not entitled to exemption from liability for the torts of its employees.

It is apparent, therefore, that the jurisprudence is far from uniform or satisfactory on this subject, but it is quite clear that, where the city or governmental agency engages in a proprietary function for profit, the exemption from liability for tort is forfeited, unless the case can be brought within the exception to the rule that the charge or fee was merely incidental to the discharge of the governmental function and not for the purpose of revenue or gain. Now the allegations of the petition are that the swimming pool is operated by the city park improvement association "as a proprietary function for profit," the same fee of 25 cents being charged as is charged by privately owned and operating swimming pools elsewhere in this community. Hence, according to the allegations of the petition, the association is conducting a swimming pool just the same as private corporations operating swimming pools in the city are doing and in competition with them. There is nothing in the petition which would justify us in saying that the fee charged and the revenue derived therefrom is merely incidental to the operation of the swimming pool as a part of the park, because there is no affirmative allegation in the petition to that effect, or any allegation from which that conclusion can be fairly drawn. Gibbs v. I. C. R. Co., 169 La. 450, 125 So. 445; Smith v. Vellino et al. (La. App.) 156 So. 61, this day decided.

However, able counsel for the defendant

further argue that, if the evidence on the trial of the case on the merits would show that the pool is operated without any fee being charged, the defendant would not be liable, because, under the above authorities, it would be engaged in performing a governmental function, the swimming pool being an adjunct of the park and operated without remuneration from those who enjoy it; on the other hand, if the evidence would show that the association has operated the swimming pool for profit and revenue as a private business, the acts of the officials of the association in so doing would be clearly ultra vires, as the Legislature only delegated to the association governmental functions to operate and maintain the park for public recreation and not the right to engage in private business. Therefore it is argued that the exception is good on either ground.

From the petition as well as the act of the Legislature it appears that the charter of the association is a private one, being by notarial act. It was never offered in evidence by the defendant, and objection was made by the plaintiff to the consideration of any documents not properly filed. It is impossible, therefore, for us to know what the objects and purposes of the association are. It might well be that the association had the right to engage in private business as well as corporate, municipal, or governmental functions which may have been delegated to it by the city of New Orleans or the state of Louisiana. It follows that, if the association has the capacity to engage in business of a private, corporate, or municipal nature and character, even though the officials of the association may have been guilty of an ultra vires act in carrying out the mandate of the Legislature, the association would be liable in its private capacity. If this be so, then the defendant insurance carrier would likewise be liable.

We conclude that the exception of no right or cause of action should have been overruled and the case tried on its merits.

For the reasons assigned, the exception of no right or cause of action is overruled, and the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that this cause be remanded to the civil district court for the parish of Orleans for further proceedings consistent with the views herein expressed.

Reversed and remanded.