No. 32,435

GEORGE H. E. SMITH and CLARA SMITH, his Wife, *Appellants*, v. THE UNITED POWER AND LIGHT CORPORATION, *Appellee.*

(51 P. 2d 976)

Opinion filed December 7, 1935.

*Carr W. Taylor* and *Aaron Coleman,* both of Hutchinson, for the appellants.
*A. C. Malloy, Roy C. Davis, Warren H. White, Frank S. Hodge,* all of Hutchinson, *Thomas F. Doran, Clayton E. Kline, Harry W. Colmer*y and *M. F. Cosgrove,* all of Topeka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiffs appeal from a judgment rendered on the pleadings and their opening statement.

Omitting formal allegations and rearranging the order of others in an attempt to produce greater clarity, the petition states the defendant corporation is the owner of a certain block in Hutchinson, except six lots in the northeast corner, and excepting a triangular piece in the southwest corner south of Cow creek used as a city park; that Hutchinson has a population of approximately 30,000,

and that Cow creek runs diagonally through the city; that Cow creek enters the above block about the center of the west side of the block and runs east and a little south to the east side of the block, and that the defendant operates a water and light plant on said property to supply the inhabitants with water and electricity. It is further alleged that as long as Cow creek was maintained in its natural condition without obstructions, it was not dangerous to children of tender age who might wander from home and along its banks, because the stream with its ordinary flow would not have been deep enough to drown a child at its deepest point; that in its natural state through defendant's property the banks were not perpendicular but sloped back so gradually that children of tender years would not have fallen into the stream, but that the defendant unlawfully and without authority constructed a dam near the east side of the block for the purpose of retaining the water above the dam at a much higher level than the natural flow of the stream and of a depth of from four to six feet, and on the north bank built up the bank and constructed a rock wall to support it, changing the bank from a sloping to an almost perpendicular bank, without a guardrail or sufficient fence to prevent infants of tender years from falling off said bank into the deep water; that changing said stream from a natural flowing stream, which was not dangerous, into an artificial flume, canal or conduit for manufacturing purposes without guarding the same along the north bank to prevent children of tender years from falling therein not only constituted negligence, but willful and wanton negligence. It is further alleged that on August 21, 1933, plaintiffs were the parents of Phyllis Joan Smith, a child of twenty-two months, the family residing in a dwelling house situated north of Cow creek on defendant's property, and being subtenants of said dwelling; that the mother of the child was engaged in doing the family washing on the back porch of the dwelling and had placed the infant child with a five-year-old brother in a small woven-wire inclosed garden plot at the rear of the residence; that after so placing the children she continued her work and in about twenty minutes the brother told her his sister had pushed open the gate, had gotten out of the inclosure and had strayed away and he did not know where she went; the mother immediately started to find the child, sending an older child to look for it; a few moments thereafter she was informed by an employee of defendant the child was found drowned in Cow creek; that at

said time the husband and father was absent from the home. The petition contains the following paragraph:

"These plaintiffs further state that said daughter, Phyllis Joan Smith, came to her death because of the willful and wanton negligence of the defendant in this, to wit: That said defendant had failed to construct and maintain a fence sufficient to prevent children of tender years, and without sufficient intelligence to appreciate danger, who might happen to wander away from home, from falling into Cow creek, and allege the fact to be that there was no fence nor guard maintained by said defendant along the north side of said bank on their premises to prevent the said daughter of plaintiff from falling into said Cow creek at the time she fell therein and was drowned."

Defendant's answer will be noticed very briefly. It admitted corporate existence, ownership of property, the drowning of the child in Cow creek in the described block, but denied defendant was guilty of any negligence. It alleged defendant constructed the dam many years ago under oral authority and consent of the city, but denied that the dam increased the depth of the creek so as to make it more dangerous to children than it would have been in its natural state, and denied that defendant constructed an aqueduct, flume, canal or conduit as alleged in the petition, and that it was guilty of any willful or wanton negligence. The answer also contained a general denial, denied that plaintiffs had any legal capacity to maintain the action, and alleged the parents were guilty of negligence in permitting the child to wander away from home without care, which contributed to the death of the child and hence prevented their recovering damages. No reply seems to have been filed.

In his opening statement, plaintiffs' counsel read the petition and a portion of defendant's answer and then stated the evidence would show facts which we may summarize as being those pleaded in the petition. In a colloquy with the trial court as to whether plaintiff relied upon the fact the stream was an attractive nuisance or upon the failure of the landlord to keep the premises in a reasonably safe condition for the tenants, plaintiffs' counsel claimed the right to present both features. The trial court said:

"I think the attractive nuisance is out of it anyway. I think it is the duty of the landlord to keep the premises in a reasonably safe condition for the tenants."

The defendant moved for judgment because, summarized, the pleadings and the opening statement showed:

1. The situation alleged to exist did not constitute an attractive nuisance.

2. Defendant owed no duty towards plaintiff and the deceased child except not to willfully and wantonly injure the child.

3. Defendant was not guilty of any wanton or willful act, conduct or negligence.

4. Plaintiffs were subtenants, and there is no allegation the defendant ever licensed plaintiffs or any of their family to enter the portion of the premises involved in this action.

5. No allegation or claim defendant ever invited or consented to the deceased child or any other child coming upon the part of defendant's property involved herein.

6. Plaintiffs were guilty of contributory negligence.

After argument, the court, without specifying the ground or grounds, sustained the motion and dismissed the suit. Plaintiffs appeal, assigning as error the sustaining of the motion, refusal to try the cause and submit it to the jury and rendering judgment of dismissal.

Appellants argue their appeal under two heads:

1. Under the allegations of negligence and the statement of facts, the liability of the defendant is fixed because plaintiffs and their child were subtenants on the premises and not trespassers or mere licensees.

2. The facts show a duty rested upon defendant to keep the premises occupied by its subtenants and children in a safe condition and this could have been done by fencing the north side of the creek, which was practical under the circumstances.

Appellants argue that a proper consideration of the facts in this case excludes those cases where the injured or deceased person was not rightfully on the premises, although to determine the question whether or not the changes made in the stream and the failure to put up a fence or barrier constitutes actionable negligence, they rely on a quotation from *Peters v. Bowman,* 115 Cal. 345, 47 Pac. 113, cited in *Tavis v. Kansas City,* 89 Kan. 547, 553, 132 Pac. 185, and in *Harper v. City of Topeka,* 92 Kan. 11, 14, 139 Pac. 1018, reciting as follows:

"The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others

responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different." (p. 356.)

The allegations of the petition and the opening statement are to the effect that before the dam was placed in the stream it had gradually sloping banks and the water was not deep enough to drown a child, but that after the improvement the water was from four to six feet deep and the bank had been made almost perpendicular and was without guardrail or sufficient fence to keep infants of tender years from falling off the bank. It was not alleged or stated how high the bank was, either before or after the work of improvement.

In *Somerfield v. Power Co.*, 93 Kan. 762, 145 Pac. 893, defendant constructed an open canal in the city of Arkansas City about fifty feet wide, with perpendicular banks thirteen feet high, carrying a stream six to eight feet deep, not fenced or guarded. Plaintiffs' three-year-old son wandered from their home, which was fifty feet from the canal, to the canal, fell in and was drowned. In that case there was no improvement of a natural watercourse, but construction of an artificial one. It does not appear that the child's parents resided on property owned by the power company. In the opinion it was said the canal had the characteristics of a natural stream and could not be regarded as an attractive nuisance, and that there was no greater necessity to build a fence or put a cover over the canal than there would be to fence or cover a natural stream. The question of placing devices which of themselves would have made the place attractive, an element not in the case before us, is also discussed, and the lack of such devices commented on. The conclusion of the court was there was no liability. The decision has been followed in: *Pennington v. Oil & Gas Co.*, 106 Kan. 569, 189 Pac. 137; *Zagar v. Railroad Co.*, 113 Kan. 240, 214 Pac. 107; and *Gorman v. City of Rosedale*, 118 Kan. 20, 234 Pac. 53; where somewhat similar situations were involved.

Appellants are precluded from recovery under the above cases, unless there is some reason why they should not apply. They argue, however, that they are tenants of the appellee, and that by reason of the relationship, a greater duty existed than as to a trespasser. And in this connection it is argued that it was practicable to have placed a fence along the north bank of the stream. The allegation

of the petition is that the appellee owned most of the block and that plaintiffs and their family as subtenants were occupying a dwelling located on the tract. Neither the petition nor the opening statement shows at what place on Cow creek the child was drowned. While plaintiffs are entitled to a liberal construction of their pleadings, it is difficult to see where there is room for saying they were tenants of any part of Cow creek or at one point on Cow creek any more than at another point, or for saying they were tenants of all that part of the block owned by the appellee. And this becomes even more obscure when the opening statement is considered, for there it appears the house, not a plot of ground, was rented to a Mr. Ristine, who subrented a portion to a Mr. and Mrs. Reece and another portion to plaintiffs. Were they all tenants of the entire tract? That question must certainly be answered in the negative. And we find it difficult to say from the petition and statement they were tenants of any tract abutting on Cow creek. However, an answer to the precise question before us is not necessary.

As we view this case, there is another reason which of itself precludes recovery. The petition alleges:

"That during the forenoon of said day the mother of said child, Clara Smith, above named, was engaged in doing the family washing on the back porch of said dwelling house; that she placed the daughter, Phyllis Joan Smith, and her little brother, five years of age, in a small inclosed garden on said premises at the rear of said house; that said garden was inclosed by a woven-wire fence and a gate leading to it; that her said daughter and her older brother were left to play in said garden; that immediately thereafter she returned to her washing and gave no further attention to the children within the garden until she was told. . . ."

The opening statement was:

"Now the evidence will show that on this morning, Mrs. Smith was engaged in doing the family wash out on the back porch; that there was a small garden that was fenced in by a woven-wire fence; as I understand it, the evidence will describe it to you; it wasn't very large, maybe sixteen or twenty feet square, but they had a little garden in there.

"The evidence will show that this 22-month-old child and the little brother five years old went into that garden and the gate, I think, didn't come quite— that is, didn't quite close; that the mother saw them playing there as she worked with the laundry with an older boy, a brother of this child, who was about ten years old; and she pursued her labors there in washing her clothes and didn't pay any attention, maybe, to these children."

A somewhat similar situation was involved in *Pennington v. Oil & Gas Co.,* where parents brought an action to recover for death of

their son. The family lived close to a pump house, the father being employed to run the plant. A nine-year-old son was permitted to enter, was caught in machinery and killed. Although other matters were involved, it was held plaintiffs were chargeable with the management and control of their children, and the defendant company could not be held responsible for their lack of care.

Suppose the real estate were a farm crossed by a small creek near which were the farm dwelling and buildings. In order to conserve water for stock the owner dams the stream and improves it for that purpose. Must he then fence it so that his tenant's children who are permitted to wander around the premises may not fall therein? Or suppose he occupies the house himself and permits a part of it to be occupied by a family, the head of which works for an adjoining owner. Is he liable to the parents if they permit their child to go to the creek and it drowns?

Regrettable as it is, the allegations of the petition and the opening statement show that the child was put in a place of safety, and had the gate been fastened it could not have gotten out and wandered away to its untimely end. But who is to blame? Shall the defendant company be held liable to the parents under the circumstances?

Under our decisions above noted, we are constrained to hold that there was no attractive nuisance required to be guarded by the owner of the premises, there is grave doubt that any showing as to tenancy was made, but in any event the parents were guilty of negligence which contributed to the death of their child, and the trial court ruled correctly in sustaining defendant's motion for judgment on the pleadings and opening statement, and its judgment is affirmed.