Cayetano k/a Santana Vargas Rodríguez et ux., Plaintiffs and Appellees, *v.* Puerto Rico Water Resources Authority, Defendant and Appellant.

No. 154. Decided September 28, 1962.

José Vila Ruiz, José Antonio Arabía, José A. García Malpica, and C. Díaz Lamoutte for appellant. José Veray, Jr., and Pablo R. Cancio for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

A child three years and five months old drowned in an irrigation canal. "This canal originates in the electric power plant of Isabela and is eight kilometers long ending at lake number two. It is 17 feet wide and 7 feet deep, and its appearance is that of a flowing river at the rate of 2 feet per second, which is equal to 1.30 miles per hour. It is not fenced, and has no signs warning the danger involved in approaching it and since 1955 it is operated by the Puerto Rico Water Resources Authority, which uses it to produce electric energy which it sells, and it is an accepted fact that this canal belongs and is part of the Isabela Irrigation Service, property of the Commonwealth of Puerto Rico, and which canal is operated by the Puerto Rico Water Resources Authority since 1955."[1]

The trial court sustained the complaint filed by the parents of the minor against the Water Resources Authority

---

[1] Fifth finding of fact of the trial judge.

to obtain compensation for the damages suffered by reason of their son's death. We agree to review the judgment rendered.

The trial court bases the liability imposed on appellant on the fact that the canal constitutes an attractive danger for children and that it was defendant's obligation, because said canal constitutes a place of real danger for children, "to provide same with fences, signs, warnings, or signals, or to have it under the vigilance of some guardian or watchman."

 *Ramos* v. *Sucesión J. Serrallés*, 51 P.R.R. 332 (1937), ratifies the applicability in this jurisdiction of the doctrine of attractive nuisance. *Sioux City & Pacific R. Co.* v. *Stout*, 84 U.S. 657 (1873). In *Díaz* v. *Central Lafayette*, 66 P.R.R. 780 (1947), we set forth the essential requisites to render it applicable by adopting the requirements set forth in § 339 of the Restatement on Torts:[2]

"A possessor of land is subject to liability for bodily[3] harm to young children trespassing thereon caused by a structure or other artificial[4] condition which he mantains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children, because of their youth, do not discover the condition or realize the risk involved in intermeding in it or in coming within the area made dangerous by it, and

---

[2] In Restatement, Torts, 2d (Tent. Draft No. 5 of April 1960), some amendments are made to § 339, but they do not fundamentally alter the original version. A clause (e) is added that through oversight was omitted in the published version and which reads as follows:

"(e) The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

[3] In the Spanish version the term "bodily" has been translated as "personal."

[4] See the note which appears in 2 Okla. L. Rev. 537, on the exigency that it be an artificial condition.

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

It being established that in this jurisdiction the doctrine which predominates is the one that makes the owners of farms liable for damages suffered by children who trespass, if certain circumstances are present, it is proper to decide whether the situation of facts presented in this case justifies liability. Even in jurisdictions where the liability to which we have referred is imposed, the doctrine which exempts the owner of real property from damages suffered by children who might frequent the bodies of natural water found in his farms has general acceptance. *Schaffer* v. *Claremont Country Club*, 336 P.2d 254 (Cal. 1959). In *Peters* v. *Bowman*, 47 Pac. 113 (Cal. 1896), the following was set forth:

"A body of water—either standing, as in ponds and lakes; or running, as in rivers and creeks; or ebbing and flowing, as on the shores of seas and bays—is a natural object, incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view, consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall."

From their most tender age children recognize the danger presented by water, fire, and height. 2 HARPER AND JAMES, The Law of Torts 1452, § 27.5 (1956). Commentary (j) of § 339, Restatement, Torts 2d (Tent. Draft No. 5, April 1960), sets forth:

"*j*. There are many dangers, such as those of fire and water, or of falling from a height or into an excavation, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed to large. To such conditions the rule stated in this Section

ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it."

As a general rule artificial bodies of water that have the same characteristics as natural bodies of water have been treated alike.

■ In *Somerfield* v. *Land & Power Co.*, 145 Pac. 893 (Kan. 1915), it was stated:

"The canal, as will be observed, has the characteristics of a natural stream, and can no more be regarded as an attractive nuisance than would a river flowing through the city or a pond or lake therein. It has been held that an unprotected pool in a natural water course, to which boys resorted to wade and swim, could not be regarded as an attractive nuisance within the meaning of the 'turntable' cases. Tavis v. Kansas City, 89 Kan. 547, 132 Pac. 185. In Harper v. City of Topeka, 92 Kan. 11, 139 Pac. 1018, 51 L.R.A. (N.S.) 1032, it was ruled that a pond in a city park which was substantially a reproduction of a natural pond, although attractive to children, did not come within the rule of attractive nuisances. There is no greater necessity to build a fence or put a cover over the canal than there would be to fence or cover a natural stream, and there can be little distinction made between them so far as the 'turntable' doctrine is concerned."

See, also: *Carmichael* v. *Little Rock Housing Authority*, 299 S.W.2d 198 (Ark. 1957); *Villani* v. *Wilmington Housing Authority*, 106 A.2d 211 (Del. 1954); *Lockridge* v. *Standard Oil Co.*, 114 N.E.2d 807 (Ind. 1953); *Hanners* v. *City of Ashland*, 331 S.W.2d 729 (Ky. 1960); *Holland* v. *Vidrine*, 133 So.2d 809 (La. 1961); *Mellas* v. *Lowdermilk*, 271 P.2d 399 (N.M. 1954); *Atchison T. & S. F. Ry. Co.* v. *Powers*, 243 P.2d 688 (Okla. 1952); *McCleod* v. *Tri-State Milling Co.*, 24 N.W.2d 485 (S.D. 1946); *Meyer* v. *General Electric Co.*, 280 P.2d 257 (Wash. 1955); Note, 9 Tex. L. Rev. 618

(1931) ; Prosser, *Trespassing Children*, 47 Cal. L. Rev. 427 (1959) ; Annot., 8 A.L.R.2d 1254 (1949).

■■ The rule which we have set forth has exceptions. Among others, there is one which imposes liability on the owner of the place containing such bodies of water, if they present or contain devices which make them attractive, *Davies v. Land O'Lakes Racing Ass.*, 69 N.W.2d 642 (Minn. 1955), or which constitute a trap or present a clear and manifest danger. *Saxton v. Plum Orchards*, 40 So.2d 791 (La. 1949). Another circumstance to be considered is the location, whether they are near populated areas or roads. *Banker v. McLaughlin*, 208 S.W.2d 843 (Tex. 1948). A swimming pool in a populated area was recently considered to fall within the exception. *King v. Lennen*, 1 Cal. Rptr. 665 (1959) ; see note in 9 Stan. L. Rev. 204 (1956). It is also a factor for consideration if the surroundings of the place where the body of water is located are used by children as a recreative area, and the owner knows or reasonably should know that fact. *Altenbach v. Lehigh Valley R. Co.*, 37 A.2d 429 (Pa. 1944) ; *Barlow v. Gurney*, 29 S.E.2d 680 (N.C. 1944). But see *Torres v. Wirshing & Co.*, 78 P.R.R. 614 (1955). It would be practically impossible to determine beforehand in which circumstances liability could be imposed by way of exception. Thus, each case must be considered and decided according to the facts which it presents. *Díaz Pérez v. Commonwealth*, Civil Case No. 12274, decided June 11, 1959. Prosser, *Trespassing Children*, *supra* at 460–61.

Keeping the foregoing in mind we turn now to consider the facts which gave rise to the action filed.

Plaintiff lived with his family in a house near the irrigation canal where his son died. There were 10 or 12 houses in that place. As to plaintiff's house, the evidence shows that it was constructed much later than the canal. On the day of the tragedy, the child who drowned and three brothers,

the oldest of which was seven years of age, were playing in the batey of their house. His two older sisters were ironing at the house. The canal has the appearance of a copious river. There is vegetation in its banks. In that place the canal has no structures or hidden things which constitute a trap. It is simply and merely water running through a man-made ditch. There is no evidence to the effect that children habitually played near the borders of the canal nor that the Authority had any knowledge of such a fact. Besides, it would be slightly less than impossible to fence the whole canal system or maintain continuous vigilance so as to avoid accidents such as the one in the case at bar.

Thus, it is an inevitable conclusion that on the basis of the facts considered herein, liability against defendant does not lie, either because we can apply the rule that the natural bodies of water or the artificial ones which resemble them do not constitute an attractive nuisance, or because the conditions established in § 339 of the Restatement on Torts and which we adopted in the case of *Díaz* v. *Central Lafayette, supra*, do not concur. Paragraphs (b) and (d) clearly do not concur. It is unnecessary to consider whether the others are present. Paragraph (b) does not concur because since the evidence established that the canal is like a river, to maintain it in the conditions in which the one at bar is maintained, does not involve an unreasonable risk for the owners. Neither does paragraph (d) concur since it is of enormous usefulness to a whole area of the Island to maintain irrigation, and the risk that children might die in the canal is small, given the fact that from a tender age they are conscious of the danger which water entails.

Therefore, the judgment rendered by the Superior Court, Aguadilla Part, on April 15, 1959, will be reversed.